## Case No. 16,365.

### UNITED STATES v. SPALDING.

[2 Mason, 478.] [1]

Circuit Court, D. Rhode Island.. June Term, 1822. ·

ACTION ON BOND — PLEADING — PROFERT — JURISDICTION AT LAW.

1. If an obligee tear off the seal, or cancel a bond in consequence of fraud and imposition practiced by the obligor. he may declare on such mutilated bond as the deed of the party, and set forth the special facts in the profert.

[Cited in Cutts v. U. S., Case No. 3,522; U. S. v. Williams, Id. 16,724; Smith v. U. S., 2 Wall. (69 U. S.) 232; Girard Ins. Co. v. Guerard, Case No. 5,461.]

[Cited in brief in Draper v. Wood, 112 Mass. 318; Bird v. Bird, 40 Me. 401; Brown v. Cousins, 51 Me. 302.    Cited in Medlin v. Platte Co., 8 Mo. 239.   Cited (Per Long, C. J.) in Ruby v. Talbott (N. M.) 21 Pac. 77.]

2. A court of law has concurrent jurisdiction with a court of equity, to sustain a suit to enforce such a bond.

3. Where a profert is made of a bond. and the declaration goes on to state the condition, and to assign a breach, it is not necessary to make a separate profert of the condition, for the whole bond is already before the court.

4. The condition of a bond among other things, was, that the party should produce the certificates and other proofs required by law, of the landing of the merchandise at some foreign port, &c., within two years, &c.; held, that a breach, negativing in the terms of the condition the production of such certificates and other proofs, was good.

Debt on five obligations, executed by Joseph Hubbard as principal, and the defendant [Edward Spalding] as surety, for certain sums of money, set forth in the declaration. The first count alleged that the defendant "on the 7th of August, 1819, at Bristol, by his certain writing obligatory, sealed with his seal, and which said writing obligatory the plaintiffs produce to the court here, in a mutilated state, and cannot otherwise produce the same, by reason that a part of the condition there underwritten, and the signature and seal of the said Spalding, have been torn from the same and destroyed by the collector of the port of said Bristol, occasioned by the production to him of a false and fraudulent certificate, then supposed by him to be true, purporting that the merchandise specified in the said condition had been delivered at a port or place without the limits of the United States at the island of St. Thomas, acknowledging himself to be held and firmly bound to the United States, in the sum of $207.18, to be paid to the said United States on demand; which said writing obligatory is subject to a certain condition, there underwritten, whereby, after reciting to the effect following, to wit, that whereas the following merchandise had been duly imported into the United States, by S. Cabot and J. & T. H. Perkins, in the ship Essex Junior, Hinman. master, from Calcutta, into the district of New York, the 3d of July, 1819, two

bales of India cotton, which said merchandise had been reshipped by Joseph Hubbard, in order to export the same in the schooner Cintra, of Porto Praya, Juan Dupony, master, then in the port of Bristol, and bound for Cape de Verds, the condition of the said obligation, therefore, was such, that if the aforesaid recited merchandise, or any part thereof, should not be relanded in any port or place within the limits of the United States; and if the certificates and other proofs required by law of the delivery of the same at the aforesaid Cape de Verds. or at any other port or place without the limits of the United States, should be produced at the office of the collector of the said port of Bristol within two years from the date thereof, then the said obligation shall be null and void, but otherwise to remain in full force and virtue. And the said United States in fact say, that the certificates and other proofs required by law of the delivery of said merchandise at the aforesaid Cape de Verds, or at any other port or place without the limits of the United States, as aforesaid, have not been produced at the office of the collector of the said port of Bristol, within two years from the date of the said writing obligatory, to wit, at said · Bristol; whereby an action hath accrued," &c. &c. in common form.    There were four other counts on other bonds, to the same purport, and with the same averments; and a sixth count for $1500, money had and received to the use of the United States.

To this declaration, after oyer of the bonds, there was a demurrer assigning as special causes.   1. That the pretended writings obligatory given on oyer had no seals affixed.   2. That the plaintiffs had set forth a pretended condition to each of the writings obligatory, without making any profert of such conditions.   3. That the plaintiffs have not set forth by whom such certificate was signed, nor in what particular the same was false and fraudulent.   4. That the declaration contains allegations improper and impertinent, and too defective and imperfect to enable the defendant to traverse or take issue thereon. 5. That the declaration is defective and insufficient, and wants form and substance. The plaintiffs joined in demurrer.

Mr. Pitman, U. S. Dist. Atty.
Mr. Searle, for defendant.

STORY, Circuit Justice.   It has been intimated at the bar, that the demurrer by mistake extends to the sixth count, and therefore I pass over all observations as to that count, for it is clear that so far the demurrer cannot be sustained.   And before proceeding to the principal point in controversy, it may be well to dispose of some other objections spread upon the record, as causes of special demurrer. One of these is, that there is no profert of the condition of the writing obligatory, although it is set forth in the declaration.   To this it is a sufficient answer, that when a

---

[1] [Reported by William P. Mason, Esq.]

profert is made of any such instrument, the whole is before the court, and it is unnecessary to make a separate profert of the condition. If the defendant wishes oyer of the whole instrument, he may pray it; but oyer of the obligatory part is not oyer of the condition; each must be prayed for, if each is wanted. Another objection is to the want of particularity in the statement of the certificate, and in what respects it is false and fraudulent. It appears to me, that it would have been more correct to have stated, generally, that the mutilation of the instrument was occasioned by fraud and imposition practised upon the collector of Bristol, leaving the special facts to be made out in evidence. And it may be, that the averment is not sufficiently pointed and exact in its present terms, at least in not stating the party, by whom the false certificate was produced. But this is the less necessary to be considered, because, if upon the merits of the more general question, the United States are entitled to relief, the court would not find any difficulty in granting leave to amend. The question therefore, to which the opinion of the court will address itself, is, whether any suit can be maintained at law upon an instrument mutilated like the present, where that mutilation has been produced by fraud and imposition, practised upon a public officer in the discharge of a public duty by a party bound by the instrument.

The bonds given in the present case are the customary bonds required by law (Act March 2, 1799, c. 128, § 75 [1 Story's Laws, 636; 1 Stat. 680, c. 22], et seq., and particularly section 81) to be given upon the exportation of merchandise, entitled to drawback, in order to enable the party to obtain the common debenture. Certain proofs are required to be produced to the collector of the port of the fact of relanding the merchandise in a foreign country, upon the production of which the bonds may be cancelled. The law, of course, supposes the certificates and proofs to be genuine, and not fraudulent, and upon this presumption, and this only, authorises a cancellation of the bonds. If the cancellation be by mistake or fraud, the collector is acting beyond the authority confided to him by law, and his act cannot bind the government. But I should be sorry, that it should be supposed, that there is any principle applicable to this case, which would not equally apply to suits between private citizens. Nothing is more clear than that deeds procured by fraud are void, and may be set aside on non est factum pleaded, upon due proof of the fraud (Thompson v. Rock, 4 Maule & S. 338; Skip v. Huey, 3 Atk. 91, 93; Com. Dig. "Fait," B, 2; Shep. Touch. 60); and grants of the government are not, in this respect, distinguishable from those of individuals (Com. Dig. "Grant," G, 8, 9). It would seem to follow as a natural conclusion from this doctrine, that deeds cancelled by fraud and imposition are to be considered as

still existing and in full force. If a deed be avoided by fraud in its concoction, it would seem almost absurd to say, that after its legal execution it should be destroyed by fraud practised upon the obligee.

The old cases proceeded upon a very narrow ground. It seems to have been held, that a material alteration of a deed by a stranger, without the privity of either obligor or obligee, avoided the deed; and by parity of reasoning the destruction or tearing off the seal either by a stranger or by accident. Pigot's Case, 11 Coke, 27; 1 Rolle, 39; 1 Rolle, Abr. "Fait," X, 1–3; Perk. §§ 135, 136; and cases cited in Cutts v. U. S. [Case No. 3,522]; Com. Dig. "Fait," F, 2; Mathewson's Case, 5 Coke, 23; Dyer, 59, and note 12; Shep. Touch. 67. A doctrine so repugnant to common sense and justice, which inflicts on an innocent party all the losses occasioned by mistake, by accident, by the wrongful acts of third persons, or by the providence of Heaven, ought to have the unequivocal support of unbroken authority, before a court of law is bound to surrender its judgment to what deserves no better name than a technical quibble. It appears to me to be shaken to its very foundation in modern times; and every case, which upholds a remedy at law, where the deed is lost by time and accident is decisive against it. The case of Read v. Brookman, 3 Term R. 151 (and see Bolton v. Bishop of Carlisle, 2 H. Bl. 259), is directly in point, and is reasoned out by Lord Kenyon with vast force and ability, upon principles of eternal justice. Mr. Justice Buller, in Master v. Miller, 4 Term R. 320, 339 (and see Waugh v. Bussell, 5 Taunt. 707; Totty v. Nesbitt; and Matison v. Atkinson, cited in 3 Term R. 153, note c; Henfree v. Bromley, 6 East, 309), said, and he is a great authority, "It is not universally true, that a deed is destroyed by an alteration, or by the tearing off the seal. In Palmer, 403, a deed which had erasures in it, and from which the seal was torn, was held good, it appearing, that the seal was torn off by a little boy. So in any case, where the seal is torn off by accident, after plea pleaded, as appears by the cases quoted by the plaintiff's counsel. And in these days I think, even if the seal were torn off before the action brought, there would be no difficulty in framing a declaration, which would obviate every doubt upon that point by stating the truth of the case. The difficulty, which arose in the old cases, depended very much on the technical forms of pleading, applicable to deeds alone. The plaintiff made a profert of the deed under seal, which he still must do, unless he can allege a sufficient ground for excusing it. When that is done, the deed or the profert must agree with that stated in the declaration, or the plaintiff fails. But the profert of a deed without a seal will not support an allegation of a deed with a seal." There is so much sound sense and legal propriety in this doctrine, that one is persuasively urged

to adopt it, and it stands supported by the authority of other cases. But however this may be, it is clear that a divulsion of the seal by the obligor himself, or by his connivance, without the assent of the obligee, does not avoid the deed. Totty v. Nesbitt, 3 Term R. 153, note c; Shep. Touch. 67. And it has been so decided by this court. Cutts v. U. S. [supra]. And I have no hesitation in declaring, that if the seal is torn off with the assent of the obligee, either by mistake, or by fraud and imposition practised · by the ·obligor, it may still be declared on as a deed, making the proper averment of the facts upon the profert, and the party will be entitled to a recovery. The case of Matison v. Atkinson, cited in a note in 3 Term R. 153, fully supports this doctrine; and if it were of the first impression, I should not hesitate to adopt it. Dealing with this case, therefore, as I am bound to do according to the admitted facts, I must take it to be a case, where the obligors to the bonds have procured the destruction of the seals by the obligee, not merely by a mistake of the facts, but by gross fraud and imposition. See, also, Perrott v. Perrott, 14 East, 423. We may readily see, how this doctrine stands in equity, from what fell from Lord Hardwicke in Skip v. Huey, 3 Atk. 91, 93, whose language meets the present case in its material features. "There are many cases," says his lordship, "where equity will set up debts extinguished at law against a surety, as well as against a principal; as where a bond is burnt or cancelled by accident or mistake, and much stronger, if a principal procure the bond to be delivered up by fraud, in such a case the court would certainly set it up, because he shall not avail himself of the. fraud of any of the debtors." Now it appears to me clear, that the doctrine is the same at law as in equity in this respect, whenever, from the nature of its proceedings, a court of law can administer relief.

And this leads me, to what has been the principal objection urged at the bar, viz. that the proper remedy in this case is in equity, and not at law. That effectual relief might be administered, in a case like the present, in equity cannot be doubted (1 Ves. 387, 392, 393. See Atkins v. Farr, 2 Eq. Cas. Abr. 247, 1 Atk. 287, pl. 155; Anon., 2 Atk. 61; Ex parte Greenway, 6 Ves. 812); and it is as certain, that until a comparatively recent period it was supposed. that the remedy was exclusively in equity. Such was certainly the supposition of Lord Hardwicke, as appears in Whitfield v. Fausset, 1 Madd. Ch. Prac. 22, 23 [1 Ves. Sr. 387]; East India Co. v. Donald, 9 Ves. 275; and something of the same lurking doubt of the jurisdiction at law yet lingers in the court of chancery. Ex parte Greenway, 6 Ves. 812; East India Co. v.

Boddam, 9 Ves. 464. But whatever difficulties there may have been in the original question, it is now so firmly established, that a remedy exists at law on a bond lost by time and accident, and by parity of reasoning, on a bond destroyed or cancelled by fraud, that it is too late to disturb it. It must be admitted, that the jurisdiction in equity is in general more salutary and less. liable to abuse; .but the reasoning, that endeavours to establish a concurrent jurisdiction at law, is extremely cogent, and impressive. Read v. Brookman, 3 Term R. 151. I content myself therefore with holding the law on this subject, as I find it, not meaning to doubt, that it would have been equally competent for this court to have sustained a suit for relief on the equity side of its jurisdiction.

A suggestion has been thown out at the bar of the insufficiency of the breach assigned in the declaration. But it appears to me, that this objection is unfounded, for the breach is a direct negative in the very words. of the condition. It is certainly good, according to the current of authorities. Heyford v. Reve, Yel. 40; Com. Dig. "Pleader," C, 45; Procter v. Burdet, 3 Lev. 170; Lee v. Johnson, 1 Lutw. p. 115, pl. 326–329. Leave is given to the plaintiff to amend, and to the defendant to withdraw his demurrer, as it is now too broad.