## P. H. GULLY, Administrator, v. JAMES W. HULL.

1. HUSBAND AND WIFE: PARAPHERNAL PROPERTY.—The jewelry and furniture of the wife are paraphernal property, and may be sold by her, and the proceeds invested in slaves, in the name of a trustee, for her separate use.
2. TRUSTEE: ESTATE OF.—A trustee of the bare legal title, for the purpose of protecting the property of the wife from the control or debts of the husband, may, even after the death of the husband, assert his title against those claiming adversely to the title of the wife, unless she object.
3. SAME: POWER OF CESTUI QUE TRUST.—The title of a trustee is, for the purposes of the trust, a vested estate, which cannot be defeated by the *cestui que trust*, so long as the necessity for the trust continues; where, therefore, the legal title of the property of the wife was vested in a trustee, for the purpose of securing it from the control and debts of the husband, the joint conveyance of the property, by the husband and wife, during the life of the former, will be ineffectual to defeat the title of the trustee.
4. FRAUDULENT CONVEYANCE: WHO MAY IMPEACH.—A conveyance to hinder and delay creditors is valid, as between the parties and their representatives; it can only be impeached by creditors. *Ellis* v. *McBride*, 27 Miss. R. 155.

IN error to the Circuit Court of Kemper county.    Hon. John Watts, judge.

The evidence. is sufficiently set out in the opinion of the court,

and was substantially the same on the first trial in this court as in the present, except that in the present the defendant below introduced as a part of his evidence to the jury, the mortgages to Watts and Binns, referred to in the opinion. To the introduction of which the plaintiff excepted.

The instructions on behalf of plaintiff which were refused by the Circuit Court are as follows:

"If J. B. Shines, whilst in failing circumstances in North Carolina, furnished the money to purchase the slaves, and the title was taken to plaintiff for the use of Mrs. Shines, Shines cannot defeat the trust by a subsequent conveyance."

"If the jury believe that the property was bought in North Carolina with the money of Shines, or Mrs. Shines, and the bill of sale was taken in the name of Harrison, at the instance of Shines, or Mrs. Shines, the administrator of Shines cannot contest the right of Harrison, though this arrangement was made to defeat the creditors of Shines."

The court, at the instance of defendant, charged the jury in substance as follows:

1. That if the negroes were bought with Mrs. Shines's money, and the legal title taken in plaintiff, at her request, and that if when this action was commenced Shines (the husband) was dead, then Mrs. Shines was entitled to immediate possession of the slaves, and the plaintiff cannot recover.

2. That if the negroes Rose and Letteci were purchased with Mrs. Shines's money, and if she and her husband afterwards mortgaged Rose to Watts to secure a *bona fide* debt due from them to Steele, they must find for defendant as to slave Rose.

3. That in determining whether the title of plaintiff is fraudulent or not, the jury may look at any statements or conduct of the plaintiff and of Shines and wife, which are contradictory of and inconsistent with, the statements of the witnesses, that the slaves were purchased with the money of Mrs. Shines.

4. That if the negroes were purchased for Mrs. Shines, and at her request, and with her money, and that if plaintiff paid nothing for them, the receipt from Moore to him does not convey the legal title to plaintiff, and he cannot recover.

Gully *v.* Hull.

5. That if the negroes were purchased with money derived from the sale of property which belonged to Shines, in whole or in part, and the title was made to Harrison, and if Shines ratified or assented to the transaction, when it was made, and when Shines was largely indebted, and if subsequently Shines sold the said slaves to Binns and Steele to secure the payment of *bona fide* debts, the legal title passed to Binns and Steele, and the plaintiff cannot recover.

6. That if the recitals in the deed of loan from plaintiff to Mrs. Shines are false, it is a circumstance from which fraud may be inferred.

7. That if Shines was in possession of the slaves in this State for more than three years before the sale to Binns and Steele, and was also in possession at the time the deed of loan was executed, they must find for the defendant, if neither Shines nor wife knew of, or consented to, said deed of loan.

*M. P. Jones,* for plaintiff in error.

The case now before the court is the same that was presented and decided at the April term, 1854, and presents nearly precisely the same facts and points embraced in the record when it was before this court before. The only difference in the case now before the court and the one already decided, at the April term, 1854, is, that the court below permitted the defendant in error to read in evidence two deeds from Shines and his wife to Binns & Steele, which was objected to by plaintiff at the time.

The opinion of the court upon this case when first decided, at the April term, 1854, not having been reported, the attention of the court is especially called to that decision of this case, and it is insisted, that that opinion of this court is conclusive and settles the present case. In the opinion of the court referred to, it is decided, that the wife might hold certain property independently of her husband, and might, as such, be sold and the money arising therefrom invested in the name of a trustee for her use. The testimony shows most conclusively that the money belonged to Mrs. Shines, derived from the sale of her jewelry and some furniture, and was vested by her agent, Moore, at her instance and request,

in the purchase of two negro girls, Lettice and Rose, in the name of appellant, her father, who brought this suit for the recovery of the possession of the same. This being her own money, she had a right to appoint a trustee, and vest her money in the name of that trustee for her use and benefit.

Shines's administrator cannot avoid the conveyance to appellant, though it be fraudulent, for that right belongs to creditors. Shines, if living, could not take advantage of it, and would certainly be bound by it, and his representative would stand in the same category. See 3 Vol. Bac. Abridg. 313, which says: "Fraudulent conveyances and gifts are only void against purchasers and creditors, and shall bind the parties themselves, and their representatives." For if there was fraud in the conveyance, he was *particeps criminis* to the transaction. It is here insisted that the court below erred in permitting the defendant Hull to read in evidence upon the trial, two deeds from Shines and his wife to Binns and Steel, for the reason that Hull, the representative, could not avail himself of any defence other than Shines would have been entitled to had he been living, and it is very certain that Shines and his wife, had Shines been living, could not have successfully contested the right of appellant in a suit for the recovery of said negroes; for the legal title was clearly vested in him, and he alone had the right to sue and recover the same against Shines and his wife, or any one claiming under them.

The deed of loan referred to in the record, appears, from the evidence, to have been assented to by Shines and his wife; it certainly was known to them and recognized as a loan. If I am correct in this position, then they are certainly precluded from setting up title to the property, and from making a valid conveyance to any person, and are bound by the terms of the deed.

The attention of the court is particularly called to the first charge, given by the court below, for the defendant, and to the sixth charge given for the plaintiff. The one given for the defendant is in direct conflict with the sixth charge given for plaintiff, and was certainly calculated to confuse and mislead the jury; and it is here insisted and earnestly contended that the sixth charge referred to was correct, and a proper and legal charge for the appellant upon

the facts and circumstances of the case; but the first charge referred to for defendant below was erroneous and contrary to law.

*Jarnagan* and *Rieves*, on same side.

*T. Reavis*, for defendant in error.

The plaintiff was not entitled to recover for several reasons:

1. The slaves having been purchased in his name, at the request of Mrs. Shines, and paid for with the proceeds of her paraphernal property, he was at most, nothing but a trustee of the naked, dry, legal title, which he was to hold for her as long as a necessity for his doing so should continue. The whole beneficial interest and the right of possession were in Mrs. Shines. The only necessity for his holding the naked legal title for her, was, to protect the property against the acts and liabilities of her husband. Upon his death, this necessity ceased; and the court will not permit the trust to continue any longer. Consequently, upon the death of Mrs. Shines's husband, the legal and equitable titles united in her, so that the plaintiff cannot maintain replevin on his defunct legal title, nor, indeed, any other action. The death of Mrs. Shines's husband having occurred before the commencement of the suit, the plaintiff, as a dry trustee of the legal title, became *functus officio.* This argument is fully sustained by the following cases: *Presley* v. *Rodgers*, 2 Cushm. R. 520; *Coulter* v. *Robertson*, Ib. 338-342; *Brown* v. *Doe*, 7 How. R. 181; *Puryear* v. *Puryear*, 12 Alabama, R. 13; *Cook* v. *Kennerly*, Ib. 42; *Puryear* v. *Puryear*, 16 Ib. 49; *Knight* v. *Bell*, 22 Ib. 199.

2. The only evidence of a legal title in the plaintiff is the receipt given by Moore and the declaration of Shines. The receipt does not convey any title to the plaintiff; and the slaves having been purchased with Mrs. Shines's money, her husband, and not the plaintiff, became the trustee of the legal title. See the cases last cited. Shines's declaration that the property belonged to the plaintiff, could not give him a title, for he held it himself as trustee for his wife. The deed of loan, is not evidence of title, because neither Shines nor his wife, was a party to it; and there is

no evidence that Mrs. Shines ever recognized it. For these reasons also, the plaintiff was not entitled to recover.

3. The deed to Watts, and the deed to Binns, were admissible to show title out of the plaintiff, on three grounds. First. There was evidence tending to show that the money paid by Mrs. Shines, or her husband, to Moore, for the slaves, belonged to Shines, and not his wife; whether it belonged to him, or to her, was a question for the jury. If it belonged to him, and he allowed the slaves to be conveyed to the plaintiff, it was the same thing as if he had conveyed them himself. He was deeply involved in debt at the time. This, therefore, was a fraud, which he might repudiate, as he did, by making the *bona fide* conveyances to Watts and Binns, whereby they became invested with the legal title. For where a party has made a fraudulent conveyance, he may afterward convey the same property, *bona fide;* and the *bona fide* purchaser will obtain a good title. *Eddins* v. *Wilson*, 1 Alabama, R. 237; *Vertiner* v. *Humphreys*, 14 Smedes & Marsh. R. 131. This position is not in conflict with the decisions of this court; for, while the administrator of a fraudulent grantor, cannot set up the fraud in defence of the title of his intestate, he *may* prove the fraud as a link in the chain of a *bona fide* title in another. Secondly. The evidence showed that the possession of Shines, commenced in this State, before the declaration of a loan was made by the plaintiff, and that it had continued for more than three years before the date of the deeds to Watts and Binns. The Statute of Frauds of three years, had therefore begun to run, and was not arrested by the declaration of loan. In order to stop the statute, there must have been an actual resumption of possession by the plaintiff. *Gay* v. *Moseley*, 2 Munford, R. 543; *Garth* v. *Barksdale*, 5 Ib. 101; Hutch. Code, 638. Shines, therefore, having been in possession three years, conveyed a good title to Watts and Binns; or at least a better than the plaintiff's. Thirdly. If, upon the evidence, Mrs. Shines had a separate estate in the slaves, and the legal title was held for her, either by her husband or by the plaintiff, the conveyances by her and her husband to Watts and Binns, conveyed them a title which could be set up in a court of law, to defeat an action by her trustee to

recover them. For, a married woman having a separate estate, may convey it by deed, or dispose of it otherwise, as if she were a *feme sole*, either alone, or in conjunction with her husband. *Jenkins* v. *M'Connico*, 26 Alabama, R. 213 ; *Hooper* v. *Smith*, 23 Ib. 639; 2 Roper, Husb. & Wife, 184. See also the cases cited in support of the first point.

If Mrs. Shines had a separate estate in the slaves, it was created by the transaction in North Carolina, and while she and her husband resided there. It is not, therefore, affected by the " woman's law" of this State. Consequently, she might convey it as at common law, and was not required to conform to the " woman's law" mode of conveyance, in order to pass her title. *Montgomery* v. *Agricultural Bank*, 10 Smedes & Marsh. R. 566 ; *Doty* v. *Mitchell*, 9 Ib. 435. The conveyance to Watts *was* made in conformity with the " woman's law."

Upon the whole, it is submitted, that upon the evidence before the jury the plaintiff was not entitled to recover; and that if any error has intervened, it is not such a one as if corrected, would enable the plaintiff to recover upon another trial, and, therefore, the judgment ought not to be reversed for it. And even if the plaintiff could recover upon the ground that he has the legal title in trust for Mrs. Shines, there would be no propriety in reversing the judgment to enable him to do so, when he could only do so for the ultimate benefit of Watts and Binns, whose title the defendant sets up in bar of the action. For they could subject the property in his hands, when recovered, to the equitable title conveyed to them by Mrs. Shines.

*Glenn* and *M'Allum*, on same side,

Cited, 1 Story, Eq. Jur. 317; *Vandyke* v. *Herrit*, 1 East, R. 96; *Lubbock* v. *Potts*, 7 Ib. 449; 6 Dana, 91; 11 Wheat. 258; Chit. on Contr. 680; *Ross* v. *Lane*, 3 S. & M. 695; *Gamble* v. *Gamble*, 11 Alabama, R. 966 ; *Bliss* v. *Thompson*, 4 Mass. R. 489.

*Freeman* and *Dixon*, on same side.

*T. I.* and *F. A. R. Wharton*, in reply,

Reviewed the evidence elaborately, and the authorities and position assumed for defendant in error.

HANDY, J., delivered the opinion of the court.

This case has been heretofore before this court, on which occasion a judgment rendered against the intestate of the present plaintiff in error, who was the plaintiff below, was reversed, and a new trial awarded. On the second trial, judgment was also rendered for the defendant below, and the plaintiff brings the case here again.

The action was replevin, to recover certain slaves in the possession of the defendant. In support of the plaintiff's title, he offered the following evidence : 1st. A deed of loan, executed by him to his daughter Rebecca, wife of James B. Shines, for the slaves, reserving to himself the title to the slaves, and the power to take possession of them at his pleasure, loaning and delivering them to her for her sole and separate use, while they remained in her possession. This deed, which was drawn by a witness, at the instance of the plaintiff, on the day that Shines and his family arrived at De Kalb, when it was executed or the day after, is dated and acknowledged on the 28th September, 1846, and was recorded on the 30th of that month, and witness thinks that Mrs. Shines knew of its *execution*. The slaves were in the possession of Shines when the deed was executed. 2d. It was proved by another witness, that he had an execution against Shines after the date of the deed, and that he told him that the slaves belonged to the plaintiff. 3d. A paper in these words, "Received by the hands of J. B. Shines, six hundred and twenty-five dollars, for Simmons Harrison, of Alabama, on the payment of two negroes, by the name of Lettice and Rosanna, this 23d April, 1846. A. D. Moore;" and the deposition of Moore, showing that he purchased the slaves at a sale of Shines's property, under mortgage, in North Carolina, at the request of Mrs. Shines, who furnished him the money to make the purchase; and that he executed the receipt for the purchase-money to the plaintiff, at the request of Mrs. Shines, and understood the object to be to secure the property for the benefit of Mrs. Shines and her family.

In behalf of the defendant, who claimed title as administrator

of Shines, the following evidence was offered: 1st. The declarations of both Shines and his wife, that the slaves belonged to her. 2d. That Shines gave them in as his property in Kemper county, and paid taxes upon them, and that the plaintiff never gave them in as his property, or paid taxes upon them, and that they had remained in the possession of Shines or his family, from the time they came to this State, in 1846, until his death in 1851. 3d. That Shines was insolvent in North Carolina, and when the slaves were sold there, under the mortgage, they were purchased for her, with money derived from the sale of her furniture and jewelry, the plaintiff not being present, and being unknown to Moore, who made the purchase, and the receipt being executed to him at her request and for her benefit. 4th. A deed of trust upon one of the slaves, executed by Shines and wife in February, 1851, to Watts, as trustee, to secure a promissory note made by them to one Steele, for $504, due 1st January, 1852, which was duly acknowledged and recorded, also a mortgage upon the other slaves, executed by Shines and wife to one Binns, to secure the payment of a note made by them to him, for $525, acknowledged by Shines, but not by his wife, and recorded—and proved that these notes and deed were *bona fide*, and upon full consideration.

The first question presented is, whether the evidence was sufficient to show a legal title in the plaintiff; and that has already been settled by the former decision, holding that the circumstances of the purchase of the slaves in North Carolina, vested the legal title in the plaintiff, for the use and benefit of his daughter. The evidence upon that point is now the same as when that decision was made; and upon well settled principles, that decision is conclusive of the point in all subsequent stages of the cause.

But it is contended that the plaintiff was but a mere trustee of the bare legal title, for the use of Mrs. Shine, the whole beneficial interest being in her, and the object of the trust being to protect the property against the control or debts of her husband, and that as these purposes of the trust ceased at the death of the husband, the trust became *functus officio*, and his title ceased.

This is undoubtedly true; and if Mrs. Shines had brought her action against the plaintiff after her husband's death, to recover

the slaves, his naked legal title in trust would have been no bar to her recovery under the state of facts here shown. But this is a right which Mrs. Shines alone, or some one claiming under her, by title acquired since the death of her husband, would be competent to assert. The administrator of Shines, claiming adversely both to her and to the plaintiff, could not maintain any such claim; for the plaintiff has the legal title, to all intents and purposes, unless Mrs. Shines, or those claiming under her, after the objects of the trust had ceased, chose to put an end to the trust; and there is nothing in the evidence to show that she put an end to the trust, or has made any effort to assert her interest in the property.

Again, it is objected that the deed and mortgage to Watts and Binns were erroneously admitted in evidence, and, moreover, that they showed nothing properly tending to defeat the plaintiff's action.

According to the previous decision in this case, the title of the plaintiff accrued before the date of these deeds, and of course, the prior title would prevail. This is attempted to be avoided by showing that the plaintiff's title was fraudulent as to purchasers from Shines, and that, therefore, the subsequent *bona fide* conveyances to Watts and Binns are good. But the objection to this is, that, in order to let in these deeds, it must first be shown that the prior title of the plaintiff is fraudulent on the part of Shines, and that cannot be done by the defendant, his administrator. The deeds could have no effect as evidence, in this point of view, without proof of the fraudulent title of the plaintiff; and as such a position could not be taken by the defendant, the deeds could not constitute any proper matter of defence to the action.

It is true, as is said by counsel, that when a party has made a fraudulent conveyance, and afterwards conveys to a *bona fide* purchaser, the latter may impeach the prior conveyance for fraud and set it aside. But this is quite different from the case of an administrator impeaching the deed of his intestate as fraudulent, which we have held to be incompetent by the former decision of this case, and in *Ellis* v. *M'Bride,* 27 Miss. 155.

Another ground upon which these deeds are said to be competent evidence is, that Shines having been in possession more than

three years, his conveyances to Watts and Binns were effectual against the claim of the plaintiff, which was fraudulent under the last clause of the Statute of Frauds, Hutch. Code, 638. But this position is untenable, because, first, it is liable to the same objection above stated, of the incompetency of the defendant to insist upon it, and second, the deed of loan by the plaintiff to Mrs. Shine was duly recorded.

Again, it is said, that if Mrs. Shines had a separate estate, the legal title being held in trust for her by the plaintiff, the conveyances of Shines and wife to Watts and Binns passed the legal title, which could be set up to defeat a recovery by the trustee. But the legal title of the trustee could only be determined by the *cestui que trust* after the objects of the trust had been accomplished, and there was no longer a necessity that the trust should continue. The chief object of the trust, as appears to be conceded, was, that the father should hold the property for the use and benefit of his daughter, so as to protect it against the control and debts of the husband. During the husband's life this necessity must be presumed to continue, and not to have ceased until his death. To allow the husband, in conjunction with his wife, to convey away the property, would, therefore, be a direct violation of the object of the trust, and ineffectual to defeat the legal title of the trustee. The deed would be void for want of power to make it, and the trust would continue as though it had not been made. For the title of the trustee, for the purposes of the trust, is as much a vested legal right as is the right of the *cestui que trust* to the benefit of the trust.

Hence, these deeds were ineffectual to dispose of the slaves and to defeat the legal title of the trustee, and they should not have been admitted in evidence.

It follows from these views of the case that the court erred in refusing the seventh and tenth instructions asked in behalf of the plaintiff, and in granting any or all of the instructions asked in behalf of the defendant. These instructions in behalf of the defendant were immaterial and incorrect as legal rules with reference to the circumstances of this case.

The judgment is therefore reversed and the cause remanded, and a new trial awarded.

The following is the opinion of the court, delivered on the first trial in the court, at April Term, 1854:—

FISHER, J.—This was an action of replevin in the Circuit Court of Kemper county, by the plaintiff in error, to recover certain slaves in the possession of the defendant.

The plaintiff below offered in evidence to sustain his title, a certain deed of loan to his daughter, Mrs. Shines, which stipulated, amongst other things, that the plaintiff might revoke said deed, and repossess himself of said slaves at pleasure. It was proved, in this connection, that the deed was made in the presence of James B. Shines, the husband of the *loanee*. It was further proved that the slaves were sold some time about the year 1846, under a deed of trust, in the State of North Carolina, as the property of the said Shines, when they were purchased by his wife with money which she had obtained from the sale of her jewelry and some furniture. That this purchase was made at her request, in the name of her father, the plaintiff; and that, in virtue of the title thus acquired, he made the loan above stated.

The defendant set up, in his answer, that he is administrator of the estate of James B. Shines, and as such, holds the possession of said slaves; and insists that they are part of his estate.

It was further attempted to be shown in the defence, that the purchase by Mrs. Shines, in the manner stated in North Carolina, was intended to hinder and delay her husband's creditors, and therefore void.

Upon this state of the case the jury found a verdict for the defendant, which the court refused to set aside, upon motion, and to grant a new trial.

The questions for consideration are, first, whether the plaintiff's evidence is sufficient to sustain his title, and second, whether admitting the fraudulent purchase by the wife, her husband's administrator can take advantage of it.

There are many articles of furniture which the wife may hold,

independently of the husband, and which will not be liable to his debts. Her jewelry was her own property, and might as such be sold, and the money invested in the name of a trustee for her use. The evidence is, that it was her furniture which was sold. Under this evidence, therefore, we have no hesitation in holding that the purchase in North Carolina, having been made in the name of her father, transferred to him the legal title for her use and benefit.

Aside from this evidence, the husband must be understood to have ratified the transaction, and to have renounced all right he had to the property, so far as he alone was concerned.

In regard to the other point—whether the administrator can ask to have a fraudulent conveyance of the intestate set aside, we deem it only necessary to state that the authorities on that subject are conflicting; but believe that the safer rule to hold is, to permit the administrator to take only such advantage of the transactions as the intestate himself could take.

The conveyance was binding as between the parties and their legal representatives. It is only void as to creditors who can assert their own rights, if it should become necessary.

Judgment reversed, and new trial granted.