B. H. COLLINS et al. VS. EMMA F. COLLINS.

1. DEED OF TRUST: *Alteration of deed after it is recorded: Interlineation by consent: How rights of parties affected by it.*

   C. executed a deed of trust to R., as trustee for H., to secure a note of $1,800, borrowed money, conveying the only real estate that C. possessed, and which his wife and he occupied as a homestead. The deed was dated February 13, 1873, and recorded March 3, 1873. On the 24th of March, 1873, H. made to C. a further loan of $300; it was to be temporary, and to be returned in a few days; but C. failed to pay as he promised, and in July or August, by consent of all parties, an attempt was made, by interlineation to secure the $300, in the former deed of trust, and the following words and figures were written in the record of the deed in the clerk's office, to wit: " Also for one note for $300, due March 24, A. D. 1873." The deed of trust was executed by C. alone, his wife not joining in it. *Held,* that the alteration or interlineation did not create a new contract or a new deed, taking effect from the date of the interlineation. It did not invalidate or change the original deed of trust, or affect the interests of third parties in the property conveyed. It was a mere attempt, by agreement, to add the $300 note to the deed as a security for it also, without any intention to change the force or effect of the original deed of trust, as a security for the $1,800; and as to that sum the deed has the same effect since, that it had before the interlineation or alteration was made.

2. SAME: SAME: *Homestead rights of married women: Case in judgment.*

   At the date of the execution and recording of the deed of trust, February 13, 1873, it was not necessary that the wife should join her husband in the conveyance of the homestead, but the subsequent act of April 18, 1873, did render it necessary.

APPEAL from the Chancery Court of *Yalabusha* County.

Hon. L. C. ABBOTT, Chancellor.

Complainant filed her bill against the defendants, B. H. Collins, J. O. Hendricks, E. Badley, C. Montgomery and Robert Prophit, that on November 27, 1867, she intermarried with the defendant Collins, and is now his lawful wife; that at the time of their marriage he was the owner of the real estate described therein and used as a hotel, in the town of Water Valley, which she now occupies, in part. That in 1872, her said husband neglected and insulted, and refused to support her; and, with intent to deprive her of a support, in February, 1873, confederated with the defendant J. O. Hendricks, and executed to him a deed of trust on the said property, closed up the said hotel, under the pretense of having failed; and ceased to do any business, and removed his personal property to some place, to her unknown, and abandoned her without any means of support; and, in 1874, rented the hotel to one Cook, to whom he sold the furniture in the house, calls for a discovery of the debt due by Collins to Hendricks. That, in 1875, the property was sold under the deed of trust, when Hendricks became the purchaser, at a nominal sum, and, as complainant believes, for the benefit of the said Collins. That she now occupies rooms No. 9 and 10, formerly occupied by herself and husband, prays for an account of rents and profits and alimony out of the same, etc., and a lien for alimony on the property during her natural life, and that she shall not be disturbed in the possession and occupancy of the said two rooms; alleges that she did not sign the deed of trust to Hendricks. That the said Collins has confederated and colluded with the said Hendricks to commence proceedings to put her out of the possession of the said two rooms and to turn her out, penniless and friendless, into the street. That said cause is pending before E. Badley, a justice of the peace, who has summoned two other justices to sit with him in the trial of said cause, to wit: C. Montgomery, Esq., and Robert Prophit, Esq., who are also made parties defendant. Prays for an injunction, discovery, and that the sale of

the real estate to Hendricks be set aside, and for alimony and for general relief.

The answers deny the fraud and other material allegations, and upon the hearing, it appeared that the deed of trust had been interlined on the record after the filing and recording of the same, as appears from the record, in these words: "Also for one note for $300, due March 24, A. D. 1873." This interlineation was made in July or August, 1873, and after the approval of the act of April 18, 1873, requiring the wife to join in the deed conveying the homestead, etc.

The deed of trust was to secure $1,800, and was recorded March 3, 1873. It bore date February 13, 1873. After the recording of this deed, Hendricks made to Collins a temporary loan of $300, which he failed to pay, and by consent of parties, the attempt was made in July or August to add the $300 to the deed of trust on record for the $1,800, by the aforesaid interlineation.

The chancellor decreed that this was a material alteration; had created a new contract or deed, bearing date at the time of the interlineation, and could not affect the homestead rights of complainant, and that so far as the deed of trust was concerned, her possession was quieted.

From which decree this appeal is prosecuted.

The following is assigned for error:

1. The court erred in deciding that the alteration or interlineation of the deed in trust was a material alteration.

2. The court erred in deciding that the alteration or interlineation of the deed in trust made the same operate as a new contract or deed in trust, taking effect from the date of the interlineation or alteration.

3. The court erred in deciding that said deed in trust does not affect complainant's, Mrs. Emma F. Collins' homestead rights, and that the same is, as to her, inoperative and void, so far as her homestead rights are concerned.

*Martin & Freeman* and *Fly & Fly*, for appellants:

After the injunction was dissolved, an issue was agreed upon

and submitted to the chancellor, to-wit: "Was the interlineation of the deed in trust a material obliteration of the same, and if so, did it thereby make the deed in trust a new contract, dating from the date of the alteration or interlineation?" The legal title vested in the trustee. Gully *v.* Hull, 31 Miss., 20; 1 Greenl., § 566; 2 Barb. Ch., 119; 6 Eng. L. & Eq., 153. The validity of the deed is not affected by the alteration. Croft *v.* White, 36 Miss., 455; Wilson *v.* Henderson, 9 S. & M., 375; Com'l & Railroad Bank of Vicksburg *v.* Lum, 7 How., 414; Byles on Bills, 253 (note a.); 1 Bouv. L. Dic., 117; 1 Pet., 552; 7 Serg. & R., 508; 2 N. H., 543. If not affected, there can be no new contract. Woolley *v.* Constant, 4 Johns., 54; Speake et al. *v.* U. S., 9 Cranch, 28; Barrington *v.* Bank of W., 14 Serg. & R., 405; Stephens *v.* Graham, 7 id., 505; Smith *v.* Weld, 2 Barr, 54; Willard *v.* Clarke, 7 Met., 435–7; Hills *v.* Barnes, 11 N. H., 395; Humphreys *v.* Guillow, 13 id., 386–8; Beary *v.* Haines, 4 Whart., 17. The deed could not take effect from the date of the alteration, and must affect the homestead rights. Gould *v.* Luckett, 47 Miss., 115; Summers & Brannin *v.* Roos & Co., 42 id., 782; Gully *v.* Hull, 31 id., 20; 45 id., 226; 2 Pars. on Con. (2d ed.), 231; 9 Wheat., 680; Hibblewhite *v.* M'Morine, 6 M. & W., 200; Coit *v.* Starkweather, 8 Conn., 290; Code 1871, § 2308.

*White & Chalmers*, on the same side:

Cited and commented on the following authorities as against the decree. Croft *v.* White, 36 Miss., 455; Wilson *v.* Henderson, 9 S. & M., 375; 4 Johns. L., 54; 9 Cranch, 28; Barrington *v.* Bank of W., 14 Serg. & R., 405; 7 id., 505; 7 Met., 435; 11 N. H., 395; 7 Blackf., 413.

*W. B. Turner*, for appellee:

Cited and commented on the following authorities: act of April 18, 1873, Code of 1871, § 2295, p. 501; 1 Greenl. Ev., 746–7; Chitty on Contracts, pp. 677–8–9; 1 Greenl. Ev., p. 611, §§ 569, 611; Hudson *v.* Revett, 5 Bing., 388; West *v.* Steward, 14 M. & W., 47; Hartley *v.* Manson, 4 M. & G., 172; Story on Bailments, 55; Byles on Bills (4th Am. ed.), pp. 253–4–5; Miller *v.* Stewart,

5 Condensed U. S., 727 ; Master *v.* Miller, 1 Smith's Lead. Cases, 963 ; 4 Johns., 54; 9 Cranch, 28; 14 Serg. & R., 405; 7 id., 505; 7 Met., 435, 437; 11 N. H., 395; 13 id., 386, 388; 9 Cow., 255; 18 Johns., 499.

*W. L. Nugent,* on the same side:

Cited the following: Code of 1871, § 2135 ; id., §§ 1956, 2140, 2143; Norris *v.* Moulton, 34 N. H., 392; Atkinsson *v.* Atkinson, 40 id., 249; 37 id., 437; Meader *v.* Place, 43 id., 307; Act of April 18, 1873.

TARBELL, J., delivered the opinion of the court.

The bill by which this case was instituted is to some extent complex. Its main object was to obtain a decree against the husband of complainant for a support, on the ground of desertion. In aid of this object, the bill charged a fraudulent disposition of the property of the husband, and sought to set aside or avoid a deed of trust of real estate and a sale thereunder, and to enjoin summary proceedings under the code, to dispossess the complainant, who was occupying a part of the premises involved. On the hearing, the fraud charged was conclusively disproved, and the case turned upon the effect of an interlineation appearing in the face of the record of the deed of trust. The following facts will present the question to be determined by this court: J. O. Hendricks was county treasurer of Yalabusha county. On February 13, 1873, he loaned $1,800 to B. H. Collins, one of the respondents herein, which sum was a part of the school fund of that county, for the security of the payment of which, Collins executed his note of that date, payable on the first day of December, thereafter, to Hendricks, as such county treasurer, or bearer, and on the same day, for further security, gave a deed of trust on the real estate therein described and the same involved herein. This conveyance was to N. P. Ragan, trustee, to secure the payment of the note to Hendricks, county treasurer, at its maturity and was acknowledged on the day of the date, to wit: February 13, 1873. It was recorded March 3, 1873, in the proper office

On the 24th day of the same month of March (1873), Hendricks loaned to Collins the further sum of $300, part of the same school fund, for which Collins executed his note of that date (March 24, 1873). This note was to have been soon paid, or, in other words, this was a temporary loan. Collins, however, failed to pay this last loan, and in July or August thereafter the occurrence took place which presents the question for determination. These occurrences or facts appear only in the final decree. They appear nowhere else in the record. So much of the final decree as is material, is as follows:

"This cause coming on to be heard this 13th day of October, 1875, the same being the 3d day of October term, 1875, of this court, upon bill, answer and proofs and agreement of parties thereto, to this effect, that the injunction in this cause be dismissed for want of a bond, and that said cause be tried on said bill, answer and proofs and arguments of counsel, and the defendants appearing in open court and admitting as evidence, by consent of all parties thereto, that the deed of trust filed with the papers in this cause, executed by B. H. Collins to N. P. Ragan, as trustee, for the use and benefit of J. O. Hendricks, was, in July or August, 1873, altered and interlined, by adding on the face of said deed of trust, "the further sum of three hundred dollars," to the original amount of said deed of trust, which alteration and interlineation was done after the woman's homestead law had passed, to wit: the act approved April 18, 1873, which alteration and interlineation was done by the consent of the said B. H. Collins, N. P. Ragan and J. O. Hendricks, the parties whose names appear on the face of the said deed of trust, and that the parties to the said deed of trust appeared before the clerk of this court immediately after said alteration and interlineation, and acknowledged that the same was done by the consent of all parties thereto, and had the record of said deed altered and interlined so as to show the same, and it appearing to the court that said alteration and interlineation was a material alteration of said instrument, and being done by the consent of the parties, whose

names appear thereto, that said instrument operates as a new contract or deed of trust, taking effect from the date of interlineation, and that said deed of trust affects complainant's, Mrs. Emma F. Collins' homestead right, as secured to her by the act approved April 18, 1873, for the benefit of married women, and that the same is, as to her, inoperative and void, so far as her homestead right in the property conveyed by the deed of trust is concerned." It is then "ordered, adjudged and decreed that said deed of trust is void and inoperative as to complainant's homestead right" in the property therein described. The decree directs that Mrs. Collins be "quieted in the possession" of said property, so far as the interest of the parties to said deed of trust and the defendants, B. H. Collins, N. P. Ragan and J. O. Hendricks are concerned, touching her homestead right to said property, and that her homestead interest therein "is hereby declared good and valid against said deed of trust in every respect."

From that decree the case comes to this court; errors are assigned as follows: 1. That the chancellor erred in deciding that the alteration or interlineation of the deed in trust was a material alteration. 2. In deciding that the alteration or interlineation of the deed of trust made the same operate as a new contract or deed of trust, taking effect from the date of interlineation; and, 3. In deciding that said deed in trust does not affect complainant's homestead right, and that the same is to her inoperative and void so far as her homestead rights are concerned.

In the consideration and determination of this case, it is especially material, in the light of the authorities, to fix upon the exact facts presented by the record. The statement of the final decree will be found to be vague generally and defective. Referring to the record, p. 27, Ex. A, filed with the answer, the precise interlineation is in these words: "Also one note for $300, due March the 24th, A. D. 1873." This follows the statement in deed of the note of February 13th, and except these words, no alteration or change appears as to parties, the prior note, the land embraced, the terms and conditions, date and acknowledgment;

the deed is in all other respects the same. There is no erasure, and no attempt to change the prior sum of $1,800, so to make it read $2,100, but the attempt was to make the deed secure not only the prior note but the later note of March 24th for the additional sum then loaned of $300. Nor was there any attempt to change the contract expressed in the deed. In all respects the contract remained the same, except the attempt to secure by the same deed the further, later and separate loan, not by mixing the funds into one by altering $1,800 to $2,100, by an erasure and rewriting in the larger sum, but by the words quoted. There was no agreement or purpose to change or alter the contract or deed in any respect, save by the interlineation quoted. Manifestly, the parties intended to adhere to the prior contract and deed in every particular, including the date of its record. And, as manifestly, while adhering to the deed in all its parts, they sought and sought only to make that security available for the $300 note which they attempted to include in or subject to the existing contract and deed. A change or alteration in the prior contract or deed, as to terms and conditions, and date of lien, was clearly contrary to the purpose and agreement of the parties. There was no surrender, redelivery, reacknowledgment, or rerecording of the deed of trust. Reduced to its precise terms, the agreement of the parties, as to the $300 note, clearly deducible from the record, was this and nothing more: That Collins having failed to pay the $300 note, as he agreed and expected, he was willing to give a lien for its security upon his real estate, which consisted only of the property included in the trust deed. The debt was *bona fide*, and without any purpose of fraud, as far as appears, the parties, as a cheap and convenient mode, adopted the plan of inerlining, as herein disclosed. This was done, and as before stated, upon the personal request of all the parties, without a surrender, redelivery, reacknowledgment or rerecording of the conveyance. The clerk wrote across the face of the record, the words: Interlined in the original. Upon these facts the chancellor decreed that the deed of trust operated as a new contract

or deed of trust, taking effect from the date of the interlineation, and this presents the proposition to be adjudicated. As already shown, the decree gave an effect to the interlineation contrary to the intention and purpose of the parties. Their object was the very reverse of that held by the chancellor whose ruling was, of course, in accordance with what he supposed to be the legal consequence of the interlineation. A most thorough search through all the authorities at command has failed to furnish either a precedent or theory upon which to found the decree. The cases particularly relied upon by counsel do not sustain the views of the chancellor. Some of these are under the technical requirements of stamp acts, while others, and in fact most, are unlike this in their facts.

Counsel cites 1 Greenl. Ev., § 568 a, note 9; Hudson *v.* Revett, 5 Bing., 368; West *v.* Steward, 14 M. & W., 47; Hartley *v.* Manson, 4 M. & G., 172; Story on Bailment, 55; Byles on Bills, 478, 9, 10, Miller *v.* Stewart, 5 Cond. (U. S.), 727; Master *v.* Miller, 1 Smith Lead. Cases, 963; Woolley *v.* Constant, 4 Johns., 54; Speake *v.* United States, 9 Cranch, 28; Barrington *v.* B'k of W., 14 S. & R., 405; Stephens *v.* Graham, 7 id., 505; Smith *v.* Weld, 2 Barr, 54; Willard *v.* Clarke, 7 Metc., 435; Hills *v.* Barnes, 11 N. H., 395; Humphreys *v.* Guillow, 13 id., 386; Penny *v.* Corwithe, 18 Johns., 499; Tompkins *v.* Corwin, 9 Cow., 255. Some of these cases refer to notes, bills and contracts, not under seal; some to bonds and contracts under seal; and others to deeds or conveyances of lands; between which the authorities assert an important distinction in the application of rules touching this alteration. The deed in 18 Johns., *supra*, was altered after its execution, but before delivery, by the erasure of the name of the grantee, and the insertion of another. This was done in the presence of all the parties and the witnesses. In 5 Bing., *supra*, the deed was delivered with blanks to be subsequently filled. The court, to sustain the conveyance, indulged in the fiction of a redelivery.

The note to § 568 a, 1 Greenl. Ev., merely declares the general

rule, that to uphold conveyances of real estate, altered after the execution and delivery, courts will permit juries, under circumstances, to indulge in the presumption of a new delivery. In all of those cases, however, an alteration of names, terms, description or dates, will be observed, and the parties desired to uphold them as charged; whereas, in the case at bar, the palpable purpose of the parties was to uphold the deed of trust for the $1,800 from its date, and in addition thereto, to embrace therein, the other $300. ·As to the security for the $1,800, it was perfect in all its parts, nor was there any wish or agreement to change it in· that respect. This is to be constantly borne in mind. The presumption of a delivery is not warranted, but negatived in the present case, and these observations are made in view of the authorities. 1 Greenl. Ev., § 568 a, note 9; 5 Bing., 368; 14 M. & W., 47; 18 Johns., etc., cited herein. The essentials of a conveyance of land are, a thing to be granted, a person to whom, and the sealing and delivery of the deed; the consummation being the delivery. ¦Duncan v. Hodges, 4 McCord, 239. In the case at bar the deed in trust was complete as to the $1,800, and was not only delivered but acknowledged and recorded. In Hudson v. Revett, *supra*, the deed was delivered as an escrow. It was imperfect; a blank remained to be filled. When this blank was filled, it was complete and a delivery was presumed. The grantee was not named in the deed in Hibblewhite v. M'Morine, 6 M. & W., 200, at the time of its delivery. Penny v. Corwithe, 18 Johns., 498, proceeds upon the theory of an alteration of a deed, as by a change of name, etc., after execution and before delivery.

Cleaton v. Chambliss, 6 Rand., 86, was upon a bond which had been altered, and the court proceeded upon the theory that an acknowledgment and redelivery were necessary. In Coit v. Starkweather, 8 Conn., 289, the deed had been delivered, acknowledged and recorded, after which, by consent, the word " Jr." was added to the name of the grantee in the original deed. It was then taken to the clerk, by whom the same word was inserted in the record of the deed, thus, that case, and the one at·bar are strikingly sim-

ilar in some of their facts.   In the former case the court say : " It is quite clear that the alteration attempted could have no operation."   Is not that the case at bar ?   An alteration or rather, an addition was " attempted," but not completed, and it can have no " operation," especially as to third persons, or intervening rights.

It is declared in Moore v. Bickham, 4 Bin., 1, that when a deed has been acknowledged before a magistrate, appointed by law to take and certify the acknowledgment, in order that the deed may be recorded, the parties have no right to make the most trifling alteration in it.   They have most certainly no right to make a material alteration without a redelivery, and a reacknowledgment, and this is the effect of the Code, §§ 2302, 2304, which require the conveyance of lands to be by writing, signed, sealed, and delivered, and as against third persons, to be acknowledged and recorded, though as between the parties, the acknowledgment and registration are unnecessary.

In Speake v. U. S., 9 Cranch, 28, LIVINGSTON, J., says : " After perfecting a deed in one form, no material alteration should be set up, unaccompanied by a new delivery, and a note or memorandum thereof."   So in this case, the arrangement was probably valid, as between the parties ; this arrangement may be stated to have been equivalent to a verbal or written stipulation, pursuant to which the clerk might have entered in the margin of the record that the parties had agreed to a lien upon the land in the deed of trust for the $300, secured by the note of March 23, 1873.   *Inter partes*, this would doubtless be binding, but would not displace intervening rights.   Such is about the scope and effect of the " attempted " arrangement of these parties, and the illustration suggested indicates the view taken of this case (see Woolley v. Constant, 4 Johns., 54, 60).

Modern cases are uniform, that alterations of written instruments by consent of all parties are valid ; they agree, also, that upon this subject, liberality has taken the place of strictness.   And the late doctrine is, that a sensible view is to be adopted in the determination of this class of cases.   As far as consistent the in-

tention and agreement of the parties ought to be ascertained. In Getty *v.* Shearer, 20 Penn. St., 12, the court say: "It is a mistake to suppose that the principle rests solely upon the rule in pleadings, that the instrument, after the alteration, is no longer the deed of the party, so as to maintain the issue of *non est factum.*" But, " the true foundation of the doctrine on the subject is, the dangerous consequences which would flow from permitting one of the parties to a written contract, without the consent of the other, to make any material change in it whatever." Here, as already repeated, there was consent of all parties, but there was no merger of the contract or sum secured, according to the deed of trust as originally executed, with the later contract to secure the $300, but an " attempt " to secure the later by the former. So far from a new delivery, and a reacknowledgment, these are not only negatived, but the attempt to give the lien for the $300, a relation back under the deed of trust as it stood originally is affirmed by the record. Upon the facts, no adjudication, doctrine, or rule of law, has been discovered, after an extended search, to sustain the decree appealed from. A point pressed by counsel may be mentioned without discussion. It is urged that rights vested under the deed of trust of February 13, 1873, which were not divested by the acts herein set forth. In support of this claim, Hudson *v.* Revett, and West *v.* Stewart, *supra*, are cited. Both were conveyances to trustees for the benefit of creditors. Gully *v.* Hull, 31 Miss., 20, is also cited. This was a conveyance to a trustee for the benefit of a married woman. The court say: " The title of the trustee, for the purposes of the trust, is as much a vested legal right as is the right of the *cestui que trust* to the benefit of the trust." See also Summers *v.* Roos, 42 Miss., 749, 782; id., 28; 13 S. & M., 103, and Shepherd *v.* McEvers, 4 Johns. Ch., 135. The conveyance in the case at bar is in the nature of a mortgage for the security of a trust fund belonging to the county for the support of schools. Waiving other than a mere statement of this point, the conclusion adverse to the decree is based on the prior grounds stated herein, and upon an examination of the following,

among other authorities.   6 Eng. L. & Eq., 155 ; 1 Pet., 560 ; 2 N. H., 543 ; 7 Serg. & R., 508 ; 9 S. & M., 375 ; 36 Miss., 455 ; 2 Mason, 478 ; Byles on Bills, 478, etc. ; Bouv. L. Dic., Alteration ; 23 Pick., 231 ; 1 Greenl. R., 73 , 3 Barb., 404 ; 2 id., 119 and note ; 1 Watts, 236 ; 18 Vt., 466 ; 20 id., 205 ; id., 217 ; 9 Mass., 307 ; 6 id., 519 ; id., 24 ; 5 id., 537 ; 4 Bin., 1 ; 9 Cranch, 28 ; 2 Brock, 64 ; 31 Cal., 78 ; 4 McCord, 239 ; 1 Greenl. Ev., § 504, etc., and notes ; Hartley v. Manson, 43 Eng. C. L., 96 ; 9 Wheat., 680 ; Master v. Miller, 1 Smith's Leading Cases, 1141 ; 3 Ph. Ev. C. & H. & E. notes, Alteration ; Bailey v. Taylor, 11 Con., 531 ; Jordan v. Stewart, 23 Penn. St., 244 ; 1 Denio, 240 ; 22 Wend., 388 ; 3 Barb., 404, etc.

Decree reversed, and cause remanded with direction to enforce the deed of trust for the $1,800.