## AUSTIN L. PREWETT *v.* THOMPSON W. LAND.

1. HUSBAND AND WIFE: POWER OF WIFE TO CHARGE TRUST ESTATE.—A married woman may charge in equity a trust estate secured to her, to the extent of her interest in it, but no further: and hence, if only the proceeds are settled to her use, she cannot charge or incumber the *corpus* of the estate.

2. TRUSTS AND TRUSTEE: WHEN A COURT OF EQUITY WILL CONTROL DISCRETION OF TRUSTEE TO SELL.—When property is vested in a trustee for the support and maintenance of a married woman and her children, and the trustee is clothed with the discretion to use the *corpus* of the estate for this purpose, a court of equity will control this discretion where it is abused, and compel the trustee to sell a portion of the principal of the estate, where it is necessary for the welfare of the beneficiaries.

3. SAME: SAME: EQUITY WILL NOT ORDER SALE TO PAY EXTRAVAGANT DEMANDS.— A court of equity, in determining upon an application to order a sale of the *corpus* of a trust estate, which the trustee is authorized, in his discretion, to appropriate to the maintenance and support of the beneficiaries, will look with favor upon the claims of those who have supplied the beneficiaries with necessaries, which could not be procured by the proceeds of the estate, but it will refuse its aid to secure an enforcement of improvident contracts and extravagant purchases, made by the *cestui que trust*, even if they were sanctioned by the trustee.

4. SAME: EVIDENCE: DECREE AGAINST MINORS MUST BE ON PROOF AGAINST THEM.— A complainant, who seeks the aid of a court of equity in the collection of his demand against a married woman and her minor children, who are the beneficiaries in a trust deed, for necessaries furnished them, must prove his claim against the minors; the acknowledgment of the mother will not bind them.

5. CHANCERY: PARTIES.—A decree cannot be rendered, ordering a sale of property settled in trust for the benefit of a married woman and her minor children, unless the children be made parties to the bill.

6. SAME: GUARDIAN AD LITEM: JURISDICTION OF THE COURT TO APPOINT.—A guardian *ad litem* cannot be appointed to defend a suit against minors, until they have been served with process.

7. SAME: JURISDICTION: WHERE THE DEMAND IS EQUITABLE, JUDGMENT AT LAW UNNECESSARY.—A complainant cannot come into a court of equity, to subject the equitable assets of his debtor to the payment of a legal demand, until he has exhausted his remedy at law, by obtaining a judgment and suing out an execution, which is returned *nulla bona;* but this rule does not apply, where the demand of the complainant is equitable, and he is compelled to resort to a court of chancery in the first instance.

APPEAL from the Chancery Court of Monroe county. Hon. Joel M. Acker, chancellor.

This was a bill filed by the appellee, Land, against Mrs. Boggan, one of the *cestuis que trust* (and her husband), and Austin L. Prewett, the trustee, in a certain deed, which will be hereinafter set out, to collect a demand against said parties, out of the trust property.

The bill in substance charges, that on the 23d of January, A. D. 1843, one Elisha D. Prewett made a deed, by which he conveyed several slaves, naming them, to Austin L. Prewett, in trust, for the use and benefit of, and to support and maintain his daughter, Mary Ann Boggan, and her children.    That said deed was also executed by the trustee, by which he bound himself to carry out the provisions of the same.

The bill further alleges, that the said slaves now produce a large annual income, and that they have been for several years, and now are, in possession of said trustee; that in the year 1854, said Mary Ann, and her husband and children, resided in Athens, in the county of Monroe, and that the said Mary Ann and her children were in want of the necessaries of life, and had not the ready money to purchase them withal; that, under these circumstances, the said Mary Ann, with the knowledge and approbation of the said trustee, purchased of the complainant, who was a drygoods merchant, the articles mentioned in a list, filed as an exhibit to the bill, amounting to $441 28, all of which articles were necessary for the support and maintenance of the said Mary Ann and her children, and were used by her exclusively for that purpose; that said trustee, although he had income arising from said trust property in his hands, did not furnish her with these necessaries, nor with the money to purchase them.

It is further alleged, that the husband of said Mary is insolvent, and that the trustee has sufficient of the income in his hands to pay the debt.

The prayer is, "that an account may be stated between the trustee and the trust fund;" that he be charged with the hire of the slaves, and credited with such sums as he may have expended for the support and maintenance of said Mary Ann and her children; and that the trustee may be ordered specifically to perform the *trusts* in said deed, and to pay out of the trust fund in his hands the amount due complainant; "and for such other further relief as may seem equitable and just."

The trust deed, which is made an exhibit to the bill, is a conveyance by Elisha D. Prewett to Austin L. Prewett, of nine slaves, upon the following trusts, viz., "that the said Austin L. is to hold the *title* to said property, and which is to be at all times subject to his discretion and control, for the support and maintenance of the said Mary Ann Boggan and her children, during her natural life, free from the control or management of her said husband. Secondly: should the said Mary Ann die before all her children arrive to the age of twenty-one years, then the said Austin L. Prewett shall hold the title to said property in trust, for the use and benefit, support and maintenance of the said children; and the proceeds of the labor of said negroes shall be applied, by the said Austin L. Prewett, to their use, in such manner as he may deem most advisable."

The deed further provides, that the trustee may advance such portions of the said property, as he shall deem advisable, to any one or more of the children of said Mary Ann, who shall arrive at majority, or marry during the lifetime of said Mary Ann, having regard to an equal division of said property among them; and that the property so advanced, shall be held absolutely by the children to whom it shall be given.

The deed is dated in February, 1843, and purports on its face to be executed in Monroe county, in this State.

The account claimed by complainant as due, amounts to $442 43, and consists mostly of purchases of calico, domestics, shoes, and other articles, suitable for plain apparel; also of table and kitchen furniture; there are also several items for silks, alpacas, ribbons, linens, and other articles of like grade, for wearing apparel. Indorsed on the account is an order, signed by Mrs. Boggan, and addressed to the trustee, acknowledging its justice, and requesting the trustee to pay it.

The trustee demurred to this bill, on three grounds :—

1. It does not show that a judgment at law has been recovered against Boggan and wife, or against Boggan.

2. Want of proper parties.

3. The complainants' remedy is at law.

The demurrer was overruled, and leave given to the complainants to make the children of Mrs. Boggan, parties defendant.

A guardian *ad litem* was, at a subsequent term, appointed to de-

fend for the children, and he answered for them; but it does not appear that the bill was ever amended, so as to make them parties, or that process was executed on them. A *pro confesso* was taken as to Boggan and wife.

The answer of the trustee denies the destitute condition of Mrs. Boggan and family, as charged in the bill; denies that he authorized Mrs. Boggan to contract the alleged debt with complainant; and states that Mrs. Boggan made purchases for the benefit of herself and children, from whom she pleased, and without the supervision and control of the trustee; and that if she purchased the articles mentioned in the account, she did so on her own responsibility.

He admits that he did not furnish Mrs. Boggan, the articles in specie, necessary to support herself and family; but states that he furnished her with all the money arising from the proceeds of the labor of the slaves, as fast as he could collect it, and which money she could have so appropriated; "whether the sum so furnished was sufficient to defray all the expenses of maintaining her family, or all the accounts she thought proper to contract," the respondent does not know.

The answer denies that the defendant has any money in his hands belonging to the trust fund, but states that he has advanced more than he has received.

For the complainant, D. C. Gilleglin testified, that he went to see A. L. Prewett in regard to a debt due him by Mrs. Boggan. Prewett asked him who was selling goods in Athens; and witness informed him that Kendrick & Harris, and the complainant, Land, were selling goods there. Prewett then told witness, if his sister, Mrs. Boggan, needed anything that was necessary for herself and family, to see that she got it, and he would see witness paid.

Land, the complainant, testified that D. C. Gilleglin, in the spring of 1854, told him to sell goods to Mrs. Boggan, and that her brother, Austin L. Prewett, would pay him for them; and that he understood Mr. Prewett to be the trustee of Mrs. Boggan.

This was all the evidence.

On final hearing, the chancellor decreed, that unless the defendant Prewett would pay, within three months, the debt to complain-

ant, that a commissioner should sell a sufficient amount of the property mentioned in the trust to pay said debt and all costs.

From this decree the trustee appealed.

*Sale* and *Phelan*, for the appellant.

I. This was a bill filed by Land against Prewett, as trustee in a certain deed of trust, to subject equitable assets, in the hands of Prewett, under said deed, to the payment of a debt on open account, claimed by Land, against Mrs. Mary Boggan, wife of James Boggan. The deed is from Dyer Prewett, the father of Mrs. Boggan, to plaintiff in error, as trustee, who "is to hold the title to said property, and which is to be, at all times, subject to his discretion and control, for the support, use, and maintenance of the said Mary Ann Boggan and her children," &c. The said Land alleges, that he had furnished Mrs. Boggan goods and merchandise necessary for her maintenance, and files the open account; for the payment of which, he asks that the property conveyed in the trust may be sold.

The defendant, Prewett, demurred to the bill, among other causes, because it did not allege the recovery of a judgment at law against the said Boggan, or Boggan and wife, or either of them. The court overruled the demurrer. The most favorable position that can be assigned for Land is, that after judgment at law, he could file a bill, for the payment of the judgment, against the assets in Prewett's hands, under the deed. But before a judgment, the principle is settled, that a party cannot come into equity, to subject equitable assets, in the hands of a third person, in any case. *Farned* v. *Harris*, 11 S. & M. 366; *Dick* v. *Truly*, 1 S. & M. Ch. 557; Ib. 282; Freeman's Chan. Rep. 299, and authorities there cited.

II. Mrs. Boggan—her husband being alive—had no power to make a contract for necessaries, binding on herself, or on any separate interest she might have. The husband has not been relieved from that duty, under the statutes of the State. But she had no such interest, in the property sought to be subjected, as gave her power to contract, in any manner, or for any thing. A judgment at law would not have been recovered against her, on the account, supposing her to have separate property. Nor could a judgment

have been recovered against her husband, admitting the account to have been for necessaries, except by treating the wife as his implied agent, &c. Surely, then, if a judgment could not have been recovered at law on the account, because the contract in which it originated was void, or, if recovered, must have been against the husband, upon a contract, having no reference to the deed, and with a party having no power and no right under the deed, there can be no principle, in equity, rendering valid what, in its inception, was void; or subjecting specific property to the contracts of a party (the husband), from whom the deed itself declares that property shall be free.

The rights of all parties must be determined by the deed. It is under that, the plaintiff below claims the right to recover. He must, therefore, show by the deed, that the grantor gave Mrs. Boggan the power to contract with third persons, for the articles specified in the account, for the payment of which the property conveyed should be liable in the hands of the trustee, upon bill in equity, without a judgment at law.

This is the construction of the deed, which alone can sustain the plaintiff's claim. A glance at the instrument, will convince the court that such an interpretation is against the plainest language and obvious design of the grantor. Such a construction would enable the wife at once to waste the entire property, without reference to the action of the trustee, when, by its express words, such "property, &c., is at all times to be subject to his discretion and control, for the support," &c.

III. The bill prays that an account be taken between the "trustee and the trust fund," and "that he be required to pay out of the trust funds in his hands," &c., the plaintiff's debt. Admitting that the plaintiff's claim in this proceeding, could be a lien on or paid out of the proceeds of the trust property, there can be no decree divesting the title to the specific property out of the trustee, and selling the same beyond the reach of the trust. This is done by the final decree. And admitting that even this might be done, under proper allegation and prayer, there are none such in the bill, upon which to base this decree. The bill only seeks, by its allegation, to subject the "income" of said property in the hands of the trustee. Its allegations are, "that a large annual income in money

is afforded by their labor; that the said trustee now holds in his hands the income arising from the labor of said slaves for several years; that the said trustee has in his hands a sufficient amount of money, arising from their proceeds, to pay said debt," &c. There is not the remotest allegation looking to a decree against the specific property. The prayer is consistent with the allegations, seeking alone to subject the income. It asks that an account be stated between the trustee and the trust fund in his hand, the amount due to plaintiff, &c. The decree, therefore, is consistent with the allegations and prayer of the bill. No account was taken and stated between the trustee and the trust fund, but a decree was taken against the property conveyed. No decree to sell this property could be made, under any conceivable action of Mrs. Boggan or the trustee. The deed conveys a vested interest in the same to her children, &c.

IV. Admit the legality of the decree, upon proper allegation, the allegation which is at the bottom of the whole case is, "that the said Prewett did not furnish (her) with the necessaries of life, nor with the money to purchase the same." If this allegation is not proved, there can be no claim under the deed; because, even admitting the right of plaintiff to furnish the necessaries, and then to subject the property, upon failure of the trustee to do so, if he had not so failed, the plaintiffs furnished the goods at their risk. The trustee was not required to publish to the world, and keep published, the fact that he had provided for Mrs. Boggan. It was for the plaintiff to ascertain, before he furnished. The case is, in the point now under consideration, analogous to a tradesman furnishing an infant with necessaries, after he has already been supplied. Now this vital allegation is emphatically denied by the answer, and not a particle of proof was taken on the point. It denies that any income was in his hands, and replies that he did furnish (her) with the money and proceeds arising from the property.

V. The proof in the case does not establish the account.

VI. The allegation that the goods were furnished "with the knowledge, approbation, and consent of the trustee," is denied by the answer, nor is it established by the requisite proof to overcome the answer. But, admitting the allegation to be true, it was an individual liability against A. L. Prewett, which he had no authority to

contract as trustee, binding upon the trust property, and upon which, if at all, the plaintiff's remedy was complete at law.

*Yergers* and *Anderson*, for appellee.

It is insisted by counsel for appellant, that the Court of Chancery had no jurisdiction, as no judgment was obtained on the accounts at law; but we suppose not seriously, the matter being one exclusively of equity jurisdiction. *Mitchell* v. *Otey*, 23 Miss. Rep. 239; *Swett* v. *Penrice*, 24 Ib. 416; 2 Story's Eq. § 1397 *et seq.*

It is insisted in the second place, by counsel, that the wife had no power, under the deed, to subject the trust property. Were it necessary to investigate the question, how far, in equity, the wife is treated as a *feme sole*, as to her separate estate, we might safely contend, on authority and principle, that under a deed which points out no mode of disposition, the wife would be regarded as a *feme sole* to all intents and purposes, so far as the subjection of her separate property is concerned, when she indicates a clear intention to do so. 2 Story's Eq. § 1397 *et seq.*; *Dickson* v. *Miller*, 11 S. & M. 603; *James* v. *Fisk*, 9 Ib. 144; *Berry* v. *Bland*, 7 Ib. 83.

But this question cannot arise in this case, for if it be admitted that the wife, under this deed, had no power of subjecting her separate property to her debts, it is perfectly clear that the trustee did have such power. A power to use the property in support of the family, in the absence of any provision, would necessarily be implied, either in the wife or in the trustee; but, in fact, here is an express power given to the trustee. Whether the power resides in the wife or trustee makes no difference in this case, since the intention of both, to subject the property to these debts, admits of no doubt. The proof is, in fact, conclusive on this point, though, as a general rule, such intention is not required to be clearly proved, but may be inferred from such circumstances as exist in this case. 2 Story's Eq. §§ 1399, 1400; *Berry* v. *Bland*, 7 S. & M. 83.

It is also urged by counsel, that the decree divests the title to specific property out of the trustee, and subjects it to the payment of the debt; and that this is erroneous, because there is nothing in the allegations, or prayer of the bill, to authorize it, and because, even under proper allegations, the complainants were not entitled to such relief.

Prewett *v.* Land.

Under the prayer for other and further relief, and under the allegations of the bill, the court certainly had the power to grant such a decree,—the same not being inconsistent with the statements of the bill, but founded on the facts there stated and the deed of trust.

We will confine ourselves, therefore, to the second point made by counsel, under this head, viz., that no decree could be made, under any conceivable action of Mrs. Boggan, or the trustee, to divest the specific property out of the hands of the trustee, and sell it beyond the reach of the trust. We think it clear, under all the provisions of this deed of trust, that, in a case like the present, it is competent to subject the body of the property itself. The powers vested in the trustee were of the most ample description. The title to the property was at all times to be subject to his control and discretion, for the support and benefit, support and maintenance of the said Mary and her children, until they arrived at the age of twenty-one, and during her life. It is true, that in addition to the above provision, there is a clause that he shall apply the proceeds of their labor, to the use and benefit of the children, in such manner as he may deem most advisable. But this clause is not restrictive of the power previously granted; and besides, it applies only in a certain contingency, viz., in the event Mrs. Boggan died before all the children attained the age of twenty-one. We think it is evident, that the chief object, and the main intent and purpose of this deed, was the support of the wife and children during her life; and if the mere annual proceeds of the property should not be sufficient, or from disasters, such as did occur,—the burning of her house,—the proceeds were not sufficient, the intention of the grantor would be defeated, unless the trustee had power to apply the property itself to the purpose indicated. This is made manifest by the succeeding clause, which, in making provision for the children, provides that the trustee may make advancements to them, on arriving at age, or marrying, if he shall deem such advance advisable; thus reposing in him an entire and absolute discretion over the whole matter.

By reference to this provision, it will be seen that counsel are mistaken, in supposing that any vested interest is created in the children, or any other interest, than such as was subject to the

discretion and control of the trustee. Such discretion and control would, of course, be subject to the supervision of a chancery court; but this is the very case where such a court, in exercising its supervision, would direct the specific property to be applied to supplying the necessities of the family, produced by an unforeseen disaster.

The trustee himself, we insist, is estopped from setting up any such defence, since, on the faith of his title and his promise to pay the debts, they were contracted; and his whole action amounts to a promise that the debts should be paid out of the trust property. If he made such a promise when there were no proceeds in his hands, he of course incurred a liability to have the property itself sold to pay the debts.

It is said that the bill is based on the allegation, that the trustee did not furnish Mrs. Boggan with necessaries, and that this allegation is denied, and unsustained by proof. In this, counsel are, we think, mistaken. The answer admits that he did not furnish the actual articles of necessity, but that he paid over such proceeds as he could collect. Whether this was sufficient fully to support and maintain said Mary Ann and family, or to defray all the expenses she thought fit to contract, he does not know.

The language of the answer on this point is to be noticed. Besides the allegation quoted above, the trustee denies that he *has* any funds in his hands, and alleges that he has paid over the proceeds of the hire, &c. But he does not say that, at the very time these debts were contracted with his assent and approbation, he did not have proceeds in his hands. For aught that appears, he may have paid them over since the debts were contracted.

We think, on the above grounds, that the decree should be affirmed; but should we be mistaken in this, the court may render such decree as the appellants were entitled to, and we urge that, on the proof in the case, the trustee having authorized the sale to the *cestui que trust,* and promised to pay, is *estopped from denying* that he has the necessary funds, and we are entitled to a *decree against him for the debts.* Whether he can, in his settlement with the *cestuis que trust,* show a credit for the amount of such decree thus obtained, is a matter with which appellants are not concerned.

HARRIS, J., delivered the opinion of the court.

This cause, with two others involving the same principles (No. 8604, and No. 8605), is submitted to us, on appeal, from the Chancery Court of Monroe county.

The bill was filed, by the appellee, against appellants, to subject the " trust fund," in the hands of the trustee, to the payment of an account, for goods, wares, and merchandise (filed as Exhibit B. to the bill), alleged to have been purchased by Mrs. Boggan, one of the beneficiaries, for herself and her children, who are the remaining objects of the trust. A decree was rendered, in the court below, in favor of appellee, for the amount of the account and interest, against appellant, ordering the money to be paid, in three months from the date of the decree, and on failure, directing the commissioner to seize and sell a sufficient amount of the trust property, to pay said sum and costs, and divesting the title of said property out of the trustee, and vesting it in the commissioner for that purpose. From this decree this appeal is prosecuted, and its rendition, both upon the facts in proof, as well as the principles of equity involved, assigned as error.

The doctrines of a court of equity, in subjecting trust property to the payment of the debts of the *cestui que trust*, are derived from its general jurisdiction to enforce the proper execution of trusts for the advantage of those interested. Courts of equity do not, however, undertake to control the dispositions of grantors, when they are legal; or to mould them into new forms, or to other or different purposes than those expressed by, or naturally arising out of the instrument of trust. Nor do they assume to create or confer additional rights, benefits, or obligations on the parties, to those originally designed by the grantors. They simply aim to enforce the·execution of such rights, powers, and duties, or such just and beneficial discretion, as are given or contemplated by the instrument creating the trust, when, from any cause, the trustee fails or refuses to discharge his duty, in relation to the trust subject. It was never intended to defeat the beneficial operation of these conveyances, in guarding the objects of the trust against their own extravagance, ignorance, or weakness, as well as against the wickedness of scheming sharpers, who usually profit by their misfortunes. It was not designed, by courts of equity, to make the trustee the

mere agent of the beneficiaries, to aid them in squandering the estate without the power of restraint or discretion, where both have been vested in them by the deed. In its very nature, a *trust* is an equitable interest in property, distinct from the legal title or ownership.

" In other words (says Judge Story), the legal owner holds ·the direct and absolute dominion over the property, in view of the law; but the income, profits, or benefits thereof, in his hands, belongs, wholly or in part, to others; and these uses, benefits, or charges, constitute the trusts, which courts of equity will compel the legal owner, as trustee, to perform in favor of the *cestui que trust*, or beneficiary." 2 Story's Eq. Juris. § 964. Unless some interest, power, or discretion, for that purpose, is vested in the trustee, by the terms of the trust, or by necessary implication, even in a court of equity, the beneficiaries can have no use or property in the *corpus* of the trust estate, but only a right to the enjoyment of the *proceeds*, as distinct from the property itself. 2 Story, § 968, p. 313. The *cestui que trust*, has a property in the *use*, while the property, or the body of the estate, belongs to the trustee, for the purposes expressed in the grant. Like any other property, this *use* is alienable, or may be disposed of, *in invitum*, by operation of law. Hence a married woman may have a separate property, or a *use*, and may charge it, in the same manner, she may charge her other separate estate in equity; but she has no power to charge, in any manner, by her act, the *estate* over which she has no control, and the title to which is vested in another. The deed of trust is the law of her title and interest. If the deed, therefore, *only* entitles her to the *proceeds* of the trust property, she is incapable, in any manner, of asserting successfully a greater interest than such *proceeds*, by virtue of the trust. *Aylette* v. *Ashton*, 1 Mylne & Craig, 105, 111; 2 Story, § 1397 (note 3). Where, however, the legal title to the property is vested in a trustee, for the benefit of a married woman, and by the terms of the instrument, a separate estate, *in the use and enjoyment of the property itself*, as well as the *proceeds* and *income*, is secured to the wife; she may, in such case, *in equity*, charge the estate, or *corpus*, as well as the proceeds.

But even in deeds of trust, making conveyance of property to

trustees, for the support and maintenance of married women, and their children, or giving discretion to the trustee, to use the *corpus* of the estate for such purpose, it is obvious, that courts of equity, in the exercise of their undoubted general jurisdiction over the subject of trusts, and to prevent a total failure of justice, as well as the object of the trust, will compel the trustee to its performance. See 2 Story, § 961, p. 310. In such cases, while the court will thus control the discretion of the trustee, it will not make the extravagant or reckless conduct of the beneficiary the measure of its discretion, but will see that the power it exerts is a necessary and proper one, for the benefit of all concerned, and that its exercise is demanded for the preservation of the subject, or the present and future interests of the beneficiaries. It will not allow its discretion to be forced into subservience to the indiscretion of improvident beneficiaries or inhuman chapmen, who have produced the necessity which they plead.

Were we to admit, therefore, that in the case before us, both the trustee and the court, by the terms of this deed, *have the power* to direct the sale of a portion of the trust property to pay this debt, the question arises, ought the court to compel the trustee, under the circumstances here, to exercise it.

It is admitted, that where discretion is thus given, it is only limited in its exercise by the *necessity* which invokes its aid, and to the means at command. Nor will the court look alone to the *future*, in the exercise of its power, but it will regard with favor the claims of those whose generosity or charity has led them to relieve the wants and necessities which the trustee should have satisfied out of even the body of the estate, if it could not have been done otherwise. But while the court will be thus liberal in its discretion to the benevolent and upright, it is called upon by every principle of duty, justice, and humanity, to watch with unremitting care and jealousy, the improvident contracts and liabilities, which are thus presented for its sanction, and against which these trusts are usually designed to guard.

The proof here shows that the defendant, Mary Ann Boggan, the mother of the other beneficiaries, and who has contracted this debt, has only a *life estate* in the proceeds of the property, to be enjoyed in common with her children; they are *all* to be main-

tained and supported out of it, at the discretion of the trustee, under the control of a court of chancery. To allow *her*, at *her* pleasure, to charge the *estate*, with *all debts* that she may see fit to contract, without reference to the necessities of the children, present and future, or even to her own future, would be to substitute *her* discretion for that which the grantor, under the law, has vested in this trustee, and which a court of equity can alone supervise.

The parties are without remedy at law, and in presenting themselves here, they must show a case in which it would have been the *duty* of the trustee to sell the property, for the benefit of the mother and children. They cannot ask a court of equity to do what the trustee rightly refused to do. What *necessity* is shown to have existed? The record, so far as direct proof of necessity for the sacrifice of one or more of the negroes, is wholly silent; it is not only pregnantly dumb as to the existence of such necessity, but on its face, when we come to examine the character and amount of these several accounts, they afford strong evidence of the absence of such *necessity;* there is not even proof of the sale and delivery of the articles. So far as it could affect the trustee, or the interests he represents, the acknowledgment of Mrs. Boggan, even when her signature is proved, could only be evidence against *her*, and not against the other defendants in this case. The articles purchased shows that there was no such necessity as would authorize the *sale* of minors' property.

But again, no such decree as that rendered here, could have been legally made in the absence of the minor children of Mrs. Boggan. In the case we are considering, leave was granted to amend the bill, so as to make them parties, but such amendment does not appear in the record; nor does it appear that process was either served on them personally or otherwise. A guardian *ad litem* was appointed for them, who appears and answers for them; but the court had no jurisdiction over them, until service of process, to make such an order, and this upon general principles, as determined by this court, in *Stanton* v. *Pollard*, 24 Miss. R. 155.

In the other case leave was granted, the bill amended, and guardian *ad litem* appointed, who filed his answer, but no service of process shown on the minors by the record.

The allegations of the bill are also insufficient to found a decree

for the sale of the *trust property*. The object of the bill in its inception, was evidently to reach the *proceeds* of the trust property; and hence, we presume, the omission to make the children of Mrs. Boggan parties. It was founded on the idea that Mrs. Boggan had a *separate property in the proceeds*, which she had the right to .charge with the payment of her debts in equity. As a bill to reach *the property itself*, upon the ground that the trustee had discretion to sell or .dispose of it, and that circumstances existed which required the exertion of his power, it is defective, because it does not state the *facts* showing such necessity, with sufficient particularity of detail, as to make it apparent that the trustee neglected his duty in this respect.

It is insisted, however, that the trustee ought to be estopped from setting up his defence here, because the debt was contracted on the faith of his title, and his promise to pay.

To this it may be answered that, for the personal engagements or contracts which the trustee may be liable, a full and adequate remedy exists at law. Such contracts or engagements can give the court no jurisdiction to render a decree against him, in this proceeding; nor can he be permitted to prejudice the trust by any such arrangement, not sanctioned by the deed.

The objection taken by counsel for appellant to this proceeding, on the ground that the appellee had not obtained a judgment at law, is not tenable. That doctrine is applicable to *legal demands*, seeking the aid of a court of equity to subject equitable assets. The party thus seeking the aid of equity, must first exhaust his legal remedy, by judgment, execution, and *nulla bona*. But this doctrine is not applicable to *equitable demands*, where the party is without legal remedy, and must, therefore, resort in the *first instance* to a court of equity. See *Mitchell* v. *Otey*, 23 Miss. 239; *Swett* v. *Penrice et ux.* 24 Ib. 416.

Let the decree be reversed, and bill dismissed.

The counsel for the appellees asked for a reargument, to the end that the decree should be amended, so as to subject the interest of Mrs. Boggan in the trust property, to the payment of the debt; but a reargument was refused.