Dibrell *v.* Carlisle et al.

---

CHARLES C. DIBRELL, Trustee, etc. v. E. R. CARLISLE et al.

1. EQUITY—RULES OF CONSTRUCTION IN—FOLLOWS THE LAW.—It is a common maxim that equity follows the law. Where a rule of the common or statute law is direct, and governs the case, a court of equity is as much bound by it as a court of law.

2. SAME—EQUITY AND LAW—LEGAL ESTATES AND TRUST ESTATES.—In general courts of equity give the same construction and effect to perfect trust estates, as are given by courts of law to legal estates. 1·Story Eq. (Redf. ed.), 53–55.

3. ESTATES IN FEE TAIL—WHAT WORDS CREATE—NOT COMPETENT UNDER STATUTE OF MISSISSIPPI.—The words " heirs of the body," in a conveyance of legal estate, are words of limitation, and create an estate in fee tail. Warren v. Haley, S. & M. Ch. 647: The Revised Code, p. 307, art. 3, converts estates in tail so created into estates in fee simple.

4. MARRIED WOMEN'S SEPARATE ESTATES—FOR WHAT DEBTS AND CONTRACTS CHARGEABLE.—Prior to the adoption of the Rev. Code, the wife could bind the *corpus* of her separate estate by deed of trust or mortgage for her husband's debts ; under the Code, she cannot, but may bind the income of her separate estate. She may also bind the *corpus* of the estate for the uses and purposes specified in art. 25 of Rev. Code, p. 336.

5. SAME—SAME—WHEN THE LEGAL TITLE TO HER SEPARATE ESTATE IN A TRUSTEE—TRUSTEE NEED NOT SIGN.—The *cestui que trust* may bind by mortgage or

deed of trust, or lawfully dispose of the trust estate, without the assent of the trustee, unless forbidden in the instrument creating such estate.

6. MORTGAGE, WITH POWER OF SALE, LEGAL—SUCH POWER GOOD.—A power of sale contained in a mortgage does not deprive the mortgagor of his equity of redemption, before sale, nor in any manner invalidate the instrument; nor does it bar the mortgagee's right to foreclose by judicial proceedings. It is only cumulative, and a sale under such power, made after the law day, or breach of condition, confers a good title free from the equity of redemption.

APPEAL from the chancery court of Chickasaw county. BRADFORD, Chancellor.

The complainant in the court below, Charles C. Dibrell, filed his bill to the April term, 1868, alleging that on the 4th December, 1866, William F. Walker, then largely indebted in a sum exceeding $60,000, to his wife Eliza R. Walker, on account of her separate estate, executed and delivered a deed of conveyance to one Thomas J. Denton, a citizen of said county, and his successors in office, as trustee for said Eliza, and the heirs of her body, by which he granted, bargained and sold to said trustee, certain real and personal property particularly described in the bill, and states its value at $29,942, and that it was intended to be, and was received by the parties, as a payment to that extent on the indebtedness of Walker to his wife. The deed is filed as an exhibit to the bill.

It is further stated in the bill, that Denton, the trustee, accepted the trust, entered immediately upon the discharge of his duties, residing within a few miles of the property transferred to him, ready at all times to do and perform all acts contemplated in the deed, until the 4th March, 1868 ; that on the 6th of March, 1868, under the provisions of said deed, the complainant was duly and legally appointed as successor to said Denton, by the probate judge of said county ; that on the 20th March, 1867, the said William F. Walker, confederating with Henry G. Humphries & E. R. Carlisle, commission merchants and citizens of Mobile, Alabama, to divest the said Eliza of her equitable interest in said lands, induced her to execute jointly, with her husband, a mortgage on said lands, to secure the payment of an asserted debt of $7,337.64, which the said William F. had contracted with said Humphries & Carlisle, maturing on the 19th December, 1867 ; that said deed of mortgage authorized Carlisle & Humphries, in default of payment of said debt, upon giving thirty days' notice,

Dibrell *v*. Carlisle et al.

to sell said lands at auction and divest the title from the trustee and the said Eliza, and forever bar her equity of redemption. The mortgage is filed as an exhibit to the bill.

It is further charged that said Humphries & Carlisle were fully apprised of the true condition of the title to the land when they effected the negotiation ; that they were expressly notified of the deed of trust first mentioned, and knew that the property they were seeking to incumber was trust property, settled upon the said Eliza and the heirs of her body ; that she was ignorant of the legal effect to be given to the deed of mortgage by the draftsman ; that but a small portion of the debt claimed was for her family supplies and necessaries, wearing apparel of herself or children, or their education, or household furniture, or carriages and horses, buildings on her land and premises or repairs thereof, or materials, work and labor for the benefit and improvement of her separate estate.

The bill " protests against another clause of the said deed of mortgage, as being not only manifestly against his rights, but in direct violation of the deed from said Walker to complainant's predecessor ; " alleges that the land in the deed is estimated at $20,750 ; that indebtedness in the mortgage is $7,337.64, far less than the value of the land ; charges that, since the execution of the mortgage said William F. has paid $1,800 or $2,000 to Carlisle & Humphries, which should have been credited on said indebtedness, and that the mortgage provides that the surplus from the land sale shall be paid to Walker and wife, and not to the trustee, the complainant.

The bill further states that said Humphries & Carlisle, by their agent and attorney, J. N. Carlisle, Esq., have advertised the lands for sale under the mortgage, and also about 6,000 bushels corn, on the second Monday in March, 1868. A copy of the advertisement is filed as an exhibit.

H. G. Humphries, E. K. Carlisle, J. N. Carlisle and William F. Walker are made defendants, and injunction, etc., prayed for to restrain the sale. There is also a prayer for discovery, by Humphries & Carlisle, of the amount due them, and that on final hearing the injunction be made perpetual, that the mortgage be canceled.

On the 6th March, 1868, the chancellor indorsed on the bill his fiat for injunction, upon the complainant entering into bond with

sureties in the sum of $2,000. The bond was given, and writs of injunction and subpœna issued.

Exhibit No. 1, referred to in the bill, is as follows:

" The State of Mississippi, }
    *Chickasaw County.*      }

This indenture, made and entered into this 4th day of December, 1866, between William F. Walker, of the first part, Eliza R. Walker, his wife, of the second part, each of the county and state aforesaid, and Thomas J. Denton, of the same county and state, of the third part, witnesseth: That the said party of the second part, having been the owner in her own right, at the time of her marriage, in the year of our Lord one thousand eight hundred and fifty-three, with the said party of the first part, of a large personal estate, which was received by, controlled, possessed, used and enjoyed by him, as hereinafter set forth, that is to say, thirty-three negro slaves, which went into his possession on the first day of January, 1854, and were worked and controlled in raising cotton, etc., and whose hire was worth as stated," etc. The deed then proceeds to give the names and value of the hire of each negro for eleven years, the aggregate hire valued at $34,250, and continues: " And the said party of the second part having received large sums of money from the separate estate of the said Eliza, as follows: the sum of fifteen thousand dollars on the first day of January, 1854; seven thousand dollars on the 1st July, 1855, and six thousand dollars on the 1st July, 1866, amounting to twenty-eight thousand dollars; and the said William F. having assumed the entire management and control of the separate estate of the said Eliza, and with the funds realized from the proceeds raised by her negro slaves as aforesaid, and with the cash received by him as above set forth, he purchased real and personal property as hereinafter described and valued, that is to say," etc. The deed here describes the tract of land in controversy, and a number of mules, horses, wagons, carriage and harness, farming utensils, carpenters' and blacksmiths' tools, household and kitchen furniture, jewelry, plate, stock hogs, etc., etc., valued at $8,192; and proceeds: " And the said William F. being anxious to secure, so far as he has the ability to do so, the payment of this debt he owes to his wife, amounting to the sum of sixty-two thousand two hundred and fifty dollars, taking the hire of the negro property as the basis of his liability for their

use and employment. Now, in consideration of the premises, and for and in consideration of the sum of ten dollars, paid by the said party of the third part, the receipt of which is hereby acknowledged, the said party of the first part hath granted, bargained and sold, and by these presents doth grant, bargain and sell, unto the said party of the third part, all the real and personal property above described, to wit" (giving description of land and personal property before referred to): "in trust, nevertheless, for the use, benefit and behoof of the said party of the second part and the heirs of her body forever, who are to retain the possession, management, direction and control of the property conveyed. The said trustee or his successor, to be designated by the judge of the probate court of the county and state aforesaid, in term time or in vacation, to take such possession or direction as may then be necessary for faithfully carrying out this trust according to its true intent and meaning, such as bringing and defending suits, executing bonds, signing papers or appointing an attorney-in-fact to do and perform whatever may be necessary and proper to be done in protecting and defending the said estate to the party of the second part and the heirs of her body." The deed then states that the property conveyed, valued at $29,942, "is intended to be to that extent in part payment of the sum of $62,250, the amount admitted to be due," etc., and concludes with warranty of title, etc.

Exhibit No. 2 of the bill is in the words and figures following:

THE STATE OF MISSISSIPPI, }
   *Chickasaw County.* }

This deed of mortgage, made the this 20th day of March, 1867, between W. F. Walker, with E. R. Walker, his wife, both of the county of Chickasaw and state of Mississippi, of the first part, and E. K. Carlisle, with H. G. Humphries, commission merchants, of Mobile and state of Alabama, of the other, witnesseth: That whereas the said W. F. Walker, with E. R. Walker, his wife, are indebted to the said E. K. Carlisle and H. G. Humphries in the sum of seventy-three hundred and thirty-seven dollars and sixty-four cents, said sum of money being advanced to said W. F. Walker and E. R. Walker on their crop of cotton, to be raised in and during the year, Anno Domini, 1867, on the plantation under the superintendence of W. F. Walker, Jno. D. Poyner and Thos. McCarthy; said sum of money is further secured by their certain

promissory notes, bearing date the nineteenth day of January, A. D. 1867, for the said sum of seventy-three hundred and thirty-seven dollars and sixty-four cents, subscribed with their hands and delivered to the said E. K. Carlisle and H. G. Humphries, whereby the said W. F. Walker and E. R. Walker promised to pay the said Carlisle & Humphries or order seventy-three hundred and thirty-seven dollars and sixty-four cents, on or before the nineteenth day of December, 1867, for value received : And whereas the said W. F. Walker and E. R. Walker, his wife, are willing to give this deed for satisfaction of what may be due and unpaid to the said Carlisle & Humphries, on the nineteenth day of December, 1867, next. Therefore the said W. F. Walker and E. R. Walker bargain, sell, alien and convey to the said Carlisle & Humphries all those tracts or parcels of land situated and lying in the county of Chickasaw and state of Mississippi, known and described as the west half of section twelve, in township thirteen, range five east, and the west half of section thirteen, township thirteen, range five east, containing six hundred and seventy acres, more or less ; also convey all the cotton crop that is raised on said lands or plantation under the direction or super-intendence of W. F. Walker, John D. Poyner and Thomas Mc-Carthy, which said cotton is to be shipped to said Carlisle & Humphries aforesaid as soon as is practicable after ginning and baling the same ; to have and to hold the same with all the rights and appurtenances to the said Carlisle & Humphries, their heirs, executors and administrators. But this conveyance is upon condition, if the said W. F. Walker and E. R. Walker shall, on or before the nineteenth day of December, 1867, well and fully pay the said sum of money, then this deed is to cease and to be void ; but if after that day said sum, with any part thereof, be unpaid, then it shall be lawful for the said Carlisle & Humphries, or their legal representative, after giving thirty days' notice by advertisement in some newspaper in Chickasaw county of the cause, day and place of sale, to proceed to sell at public auction at Okolona, the mortgaged property, or a sufficiency thereof, for cash to the highest and best bidder, and out of the proceeds, after defraying the cost of advertisement and sale, they may retain the full amount of mortgage money due, and if there be a surplus, they are presently to pay it to W. F. Walker and E. R. Walker, or their legal representatives, and to make to the vendee or vendees

a deed of conveyance, transmitting the quit of purchase of all right, title or interest of the parties and their heirs, or of all claiming under them, and thereupon all the right and title of the W. F. Walker, with E. R. Walker, his wife, to redeem, shall be as effectually barred and foreclosed as if upon a decree in equity; and the said W. F. Walker, with E. R. Walker, his wife, hereto put their names and seals, the day and date aforewritten."

(Signed)     ·     W. F. WALKER [SEAL].
E. R. WALKER [SEAL]. ·

Carlisle & Humphries filed their answer, averring that they knew nothing of the existence of the debt alleged to be due Eliza R. Walker, by W. F. Walker, her husband, except what they learn from the said exhibit No. 1, in the bill; and that they believe the debt fictitious; that there was no valid consideration in law or equity passing from said Eliza to said W. F. Walker, for the conveyance; that said conveyance is fraudulent and made with the intent to defraud the creditors of said W. F.; that the appointment of T. J. Denton as trustee was merely nominal, and for the better serving to cloak and conceal the said property and more effectually defrauding the creditors of the said W. F.; that said Denton, under a provision in the deed of trust, appointed the said W. F. his attorney-in-fact, clothing him with full power to act in all things pertaining to said trusteeship, as if he, the said W. F., had been trustee; and that the said W. F. executed the said mortgage in the bill mentioned as such attorney-in-fact; that the complainant, C. C. Dibrell, ignoring the action of his predecessor, Denton, filed his bill with the intent to deprive respondents of their rights and powers vested in them as mortgagees; that said T. J. Denton, being aware of the execution of said attorneyship to W. F. Walker, refused to join in said bill of complaint, but actuated by the dictates of honor and honesty declined entering into such fraudulent interference with respondents' rights; denies all confederating by Carlisle & Humphies to defeat Mrs. Walker's interest in said lands; denies inducing her to join her husband in executing the mortgage; alleges that the mortgage was made by W. F. Walker, as attorney-in-fact for the trustee and by Mrs. Walker, freely and voluntarily, without any persuasion, and by her so acknowledged in a private examination by an officer authorized to take such acknowledgment; denies all knowledge of the trust under which Mrs. Walker held the lands, and

supposed W. F. Walker fully empowered to convey or incumber them.

Respondents assert that the $7,337.64 was money actually advanced to the said W. F. Walker and his wife during the year 1867, for the necessary supplies of the plantation of said Walker and wife, and believe that it was used for them and their children; denies that the property mortgaged is and was worth $20,750, but insists that its value at the date of the mortgage and now does not exceed respondents' debt; denies that the execution of the mortgage was against the rights of the trustee, Dibrell; alleges that W. F. Walker was notoriously acting as the agent of his wife, and with the knowledge and consent of Denton, trustee; that if the allegations in complainant's bill be true, said Walker, under false and fraudulent pretenses obtained respondents' money; that said Walker and wife have never paid but $873.20, and this amount was duly credited on the debt. Respondents say that they are led to believe that Dibrell, complainant, through the solicitation and procurement of W. F. Walker, accepted the appointment of trustee, and without a knowledge of what his predecessor had done, has filed this bill and made the representations and allegations therein from false representations of W. F. Walker; and that Dibrell's action is in direct contravention of the action of his predecessor, Denton; that W. F. Walker's interest is not with respondents as defendants in this suit, but identified with the complainant; and that he cunningly devised his joinder with respondents as defendants for fraudulent purposes.

Respondents insist that the advances made by them were solely on the credit of Mrs. Walker and her children, the beneficiaries of the pretended deed of trust, and for their benefit and use and not on the credit of W. F. Walker; that he was insolvent and unable to obtain credit at the time; that the writ of injunction was illegally issued because of the want of good sureties on the bond; that said bond has no date and bears no evidence of having been duly executed as the law directs; that the *fiat* only requires a bond for $2,000, whilst the amount of indebtedness enjoined is $6,464.36, and the bond is not in double the sum so enjoined.

The mortgage referred to in the bill as exhibit No. 2 is made an exhibit in the answer also; another exhibit to the answer consists of an account of the debts due by W. F. and Eliza

Walker to Carlisle & Humphries, showing balance of $7,337.64. Exhibit C is as follows :

" THE STATE OF MISSISSIPPI, }
   *Chickasaw County.* }

*To whom these presents may come :*

Greeting : Know ye that I, Thos. J. Denton, reposing entire confidence in the probity and integrity of W. F. Walker, a citizen of the county of Chickasaw and state of Mississippi, do by these presents constitute him my true and lawful attorney-in-fact for me as trustee, appointed under a deed executed by the said Walker in favor of Eliza R. Walker and the heirs of her body as *cestui que trust*, on the 4th day of December, 1866, conveying real and personal property valued at $29,942, and in my name to sign all papers, bonds, affidavits, contracts, and to make, do and perform all and every act necessary or proper to be made, done or performed for the protection of said trust estate, or for carrying out the true intent and meaning of said trust deed, and to every act in the premises which I could do if personally present, and I hereby ratify and confirm whatever he may lawfully do in the premises. Given under my hand and seal this the 4th day of December, 1866.

      (Signed)        T. J. DENTON. [SEAL.]"

This power of attorney was acknowledged and recorded in Chickasaw county.

The opinion of the court being based exclusively upon the exhibits renders it unnecessary to present the testimony.

*J. A. Orr*, for appellant,

Contended, that the deed from Walker to Denton was valid as a post-nuptial settlement upon valuable consideration, and made before Carlisle & Humphries became creditors—and good even if they were such creditors prior to its execution. Wiley & Co. v. Gray et al., 35 Miss. 510 ; Atherly on Mar. Set., §§ 156–162. Husband may prefer his wife as a creditor if done *bona fide*. Mangum v. Finucane, 38 Miss. 354.

The mortgage of Walker and wife to Carlisle & Humphries is void. Three questions are presented : a negative to either must prove fatal to the mortgage. 1. Was it competent for Dr. Walker and his wife to charge her estate for the payment of this or any debt, other than for such items as are specified in the statute

known as the " Woman's law ?"  2. Did Mrs. Walker, as the beneficiary of the estate which had been vested in a trustee, have the power to charge or incumber the trust property, without the concurrence of the trustee?  3. Was it competent for Mrs. Walker, one of the beneficiaries in the post-nuptial settlement, or deed from Walker to Denton, to alienate the estate, the title to which had been vested in a trustee for " the benefit of her and the heirs of her body ? "

I. A married woman cannot make a bill or note at common law.  1 Pars. on Bills and Notes, § 2, ¶ 2; 21 Barb. 286; 22 N. Y. 450.  Her note utterly void.  Vance v. Wells, 6 Ala. 737; 8 ib. 399; Littlefield v. Shee, 2 B. & A. 811; Meyen v. Howorth, 5. A. & E. 466; 11 ib. 438˙; Watkins v. Halstead, 2 Sauf. 311; Davis v. Foye, 7 S. & M. 64.  Cannot be ratified after coverture ceases.  Story on Prom. Notes, § 87, citing Van Steenburgh v. Hoffman, 15 Barb. 28; Howe v. Wilde, 34 Me. 566.  As to the rights of a married woman over her separate estate, see Davis v. Foye, *supra ;* Berry v. Bland, 7 S. & M. 83; Doty v. Mitchell, 9 ib. 435; Curll v. Compton, 14 ib. 58; Selph v. Howland, 23 Miss. 268; Garrett v. Dabney, 27 ib. 344; Knot v. Lyon, 26 ib. 548; Cameron v. Cameron, 29 ib. 120.

The cases of Sessions and wife v. Bacon, 23 Miss. 272; Armstrong v. Stovall, 26 ib. 275, and Stone et al. v. Montgomery and wife, 35 ib. 84, were under the old law, and do not apply.

II. Mrs. Walker had no power to incumber or alienate the estate conveyed to the trustees without the sanction and concurrence of the trustee.  The leading case against us is 17 Johns. 548; Jacques v. the Methodist Church, overruling Chancellor Kent's opinion in 3 John. Ch. 78.  Our decisions sustain Chancellor Kent.  9 S. & M. 447, Doty v. Mitchell; 10 ib. 566, Montgomery v. Agricultural Bank; 31 Miss. 20, Gully v. Hull; 32 ib. 274, Andrews v. Jones.  The rule of our court has been adopted in Pennsylvania, South Carolina, Rhode Island, Tennessee, Virginia and Maryland.  1 Strob. Eq. 36, Reid v. Lamar; 3 Des. 462, Ewing v. Smith; 1 Hill Ch. 228, Magrood v. Johnson; Dudley Eq. 128, Robinson v. Ex'r of Dart; Cheves Eq. 163, Clark v. McKenna; 1 Rawle, 231, 248, Lancaster v. Dolan; 1 Barr, 111, Lyne v. Crouse; 4 ib. 93–98, Rogers v. Smith; 2 Wharton, 11–16, Thomas v. Folwell; 9 Watts, 137, Wallace v. Coston; 8 Leigh, 28, 27, Williamson v. Beckhom; 1

Dibrell *v*. Carlisle et al.

Swan, 489, Ware v. Sharp ; 8 Humph. 159, Marshall v. Stevens ; ib. 209, Litton v. Balwin ; 2 R. I. 355, Metcalf v. Cook ; 10 Grat. 336 ; 1 Ired. 452, Steel v. Steel ; 3 Cush. 199, Whitten v. Whitten ; 4 Md. Ch. 414, Williams v. Donelson ; 5 ib. 219, Miller v. Williamston. To the same effect, is 3 Grat. 355, Perkins v. Dickerson ; 4 Leigh, 279, Markham v. Watkins ; 27 Ala. 175, Hill v. McRae. These authorities to be taken in connection with the nature, duties and powers of a trustee. 2 Story Eq. Jur. § 964 ; 36 Miss. 206 ; Prewett v. Loud.

III. The third question is to be subdivided into the following propositions, viz. : 1. We will assume that the rule in Shelly's case has no application to the deed, but that an estate in common was vested in Mrs. Walker and her children ; 2. That the trust created by the deed is executory—not executed, and for this reason the rule in Shelly's case has no application ; 3. The rules for construing marriage settlements and wills or conveyances, differ materially ; and whilst the words employed in this deed, if employed in a will, might introduce the rule in Shelley's case, it cannot be introduced in this deed, for the reason that it is a marriage settlement ; 4. If the court should deem us in error in supposing that Mrs. Walker's children took a present interest under the deed, and that the rule applies to the personal property conveyed, we shall insist that it cannot extend to the real estate. 1 Lead. Cas. Eq. (3d ed.) 65 ; Taggart v. Taggart, 1 S. & L. 88 ; Fearne on Rem. 27-33 ; 24 Miss. 361, Powell v. Brandon ; 8 S. & M. 470, Kirby v. Calhoun ; 9 Ala. 999, Fellows, Wordsworth & Co. v. Taun ; 10 ib. 328, Spears v. Walkley ; 12 ib. 652, Jasper & Maclin v. Howard, trustee ; 2 Ired. Eq. 630, Good v. Harris ; 9 Dana, 494, Johnston, trustee v. Yates ; 10 B. Mon., 103, Jarvis & Tralue v. Quigley ; 1 Jones Law N. C. 224, Henderson v. Herron ; 6 Rich. Eq. 35, Evans v. Godbold ; 3 Rich. 156, Bailey v. Patterson ; 2 Jarman on Wills, 3 ; Keys on Chattels, § 102 ; 12 Ala. 135, Dun v. Davis ; 5 Day, 517, Morgan v. Morgan ; 6 Munf. 174, Timberlake v. Graves ; ib. 187, Gresham v. Gresham ; ib. 301, James v. McWilliams ; ib. 470, Self v. Tune ; 1 Call, 50, Bradley v. Mosely ; 2 Ves. Sr. 660, Pahr v. Baldwin ; 2 Ark. 89, Hodgeeson v. Bussey ; 2 Redf. Law of Wills, p. 390, 395, § 22.

Trustee cannot delegate his trust. 1 Sand. on U. & T. 424, note ; Tiffany & Bullard, 215, 536. As to the rule governing the

exercise of a power (4 Kent, 33) and forms, etc. 1 Sugd. on Powers, 250 margin, 252, 253, 515.

As to the power of attorney made by Denton. Ford v. Russel, Freem. Ch. R. 50.

Whether the trust is executed or executory, see Porter v. Doby, 3 Richard. Eq. ; Harley v. Platt, 6 Rich. 315 ; 2 Fearn on Rem., §§ 494, 499 ; 1 Lead. Cas. Eq. 34, marginal page. The rule does not apply to executory trusts. 1 Lead. Cas. Eq. 19, *et seq.* ; 1 Eden, 95, Stanley v. Leonard.

As to third proposition. Sand. on U. & T. 340 ; 2 Madd. 260 ; Lord Deerhurst v. the Duke of St. Albans, 1 Ball & Beattie, 25 ; Stratford v. Powell, 1 Sand. U. & T. 327 ; 1 Des. Ch. 442 ; Garner v. Garner, 1 P. Wm. 132 ; 3 ib. 32 ; Vern. 32 ; 2 Ves. 237 ; 2 Vern. 105 ; ib. 361 ; ib. 23 ; Atherly on Mar., § 95 ; 1 Lead. Cas. (H. & W.) 84, 3d. ed. ; 1 McMullen Eq. 358 ; Gaillard v. Porcher, 1 Hill Ch. 101 ; Smith v. Maxwell, ib. 1, 3 ; Ex'r of Allen v. Rumph et al., 2 Ired. Eq. 241 ; Gause v. Hale, 9 How. (U. S.) 197 ; Niver v. Scott, 24 Miss. 343 ; 30 ib. 205 ; Hampton et al. v. Rather.

The power of sale given to mortgagee must be exercised under direction of chancery court. Freem. Ch. 42, Ford et al. v. Russel—citing Powell on Mort.—Editor's notes, 9 ; Clay v. Wallis, 1 Barn. & Cres. 364 ; Wright v. Rose, 2 ib. 223 ; 1 Rand. 306. The benefits resulting to Walker and wife, under the mortgage, as against the beneficiaries in the original deed, is a fraud upon the rights, and invalidates the mortgage. 8 Barb. S. C. 126, Doremus v. Lewis ; Burrell on Assignments, 274 ; 1 Am. Law Cas. 97.

*Harris & Withers,* on same side, filed an elaborate brief.

*Gholson & Hooper,* for appellees.

Contended, that the debt secured by the mortgage was such as the woman's law (art. 25, p. 336, Rev. Code) authorizes the wife to contract for and bind her separate estate for its payment in the manner directed by that law.

If the supplies or money were received by Mrs. Walker, or her agent for her family, plantation, etc., it makes no difference whether misapplied or not. "An innocent party cannot be held accountable for the misconduct of an agent." 1 Pars. on Cont. 47.

*Dibrell v. Carlisle et al.*

If the supplies are furnished for the separate estate of the wife, it will bind it, although purchased by the husband and charged to him on the books of the merchant." Wiley v. Collins, 9 Ga. 231. A *feme covert* may execute a mortgage jointly with her husband to charge her separate estate with the individual debts of her husband. Sessions and Wife v. Bacon, 23 Miss. 272; Armstrong v. Stovall, 26 ib. 275; Stone v. Montgomery and wife, 35 ib. 84; Tyler on Infancy and Cov. 441; Demerest v. Wyncoop, 3 Johns. Ch. 123.

Whether Mrs. Walker could incumber the estate, depends upon the deed conveying to Denton the property and estate in which she is interested.

Her estate is a fee simple, because under the Code, art. 3, p. 307, the estate tail sought by the deed to be created is converted into fee simple. Rev. Code, art. 3, p. 307; Jordan v. Roach et al., 32 Miss. 481–605; Tyler on Inf. and Cov. 440, 441, citing Firemans' Ins. Co. of Albany v. Bay, 4 Barb. 407; Guild v. Peck, 11 Paige Ch. 475; Vigonneau v. Pegram, 2 Leigh, 183; Jacques v. Methodist Church, 17 Johns. 548; Whitall v. Clarke, 2 Edwards Ch. 149; Gardner v. Gardner, 22 Wend. 528; Murray v. Bartlett, 4 Sim. 82; North American Coal Co. v. Dyett, 7 Paige Ch. 15.

A married woman is to be regarded as a *feme sole*, as to her separate estate, unless she is specially restrained to some particular mode of disposition by the instrument under which she holds, etc. Tyler on Inf. and Cov. 443; 17 Johns. and 2 Leigh, *ante ;* also, 3 Randolph, 373, West v. West; Whitaker v. Blair, 3 Marsh. 239; Strong v. Skinner, 4 Barb. 546–553; Maclin v. Burroughs, 14 Ohio, 519; Leaycroft v. Hadden, 5 Green Ch. 512.

When the instrument is silent, " the better rule seems to be that she may dispose of land conveyed to trustees for her separate use, etc. 1 Pars. Cont. (5th ed.) 368; 5 Mad. 219; Tann v Williams, 4 Mad. Ch. 68; Williams v. Donaldson, ib. 414; Marshall v. Stephens, 8 Humph. 159; Litton v. Baldwin, ib. 209; Nix v. Baldwin, 6 Rich. Eq. 53; Adams v. Mackey, ib. 75; Wiley v. Collins, 9 Ga. 228; Doty v. Mitchell, 9 S. & M. 435; Metcalf v. Cooke, 2 R. I. 355; Pruwett v. Land, 36 Miss. 506; Block v. Cross, ib. 558.

*James T. Harrison* and *George L. Potter*, on same side, filed elaborate briefs.

PEYTON, J. :

This was an injunction bill brought by the appellant in the chancery court of Chickasaw county, to restrain the appellees, E. K. Carlisle and H. G. Humphries, from executing a power of sale contained in a mortgage given to them by Williams F. Walker and Eliza R. Walker, his wife.

The material facts of the case are these : William F. Walker, being indebted to his wife, Eliza R., in a large amount of money, on the 4th day of December, 1866, conveyed to one Thomas J. Denton certain real and personal estate, situated in the said county of Chickasaw, in this state, in trust for the use of the said Eliza R. Walker and the heirs of her body forever ; which deed of conveyance was duly acknowledged and recorded.

That on the 20th day of March, A. D. 1867, the said William F. Walker and Eliza R., his wife, made and executed their deed of mortgage of six hundred and seventy acres of the land, covered by the said deed of trust, to said Carlisle & Humphries, to secure the payment of a promissory note for $7,337.64, made by said Walker and wife, dated the 19th day of January, 1867, and payable to said Carlisle & Humphries on the 19th day of December, 1867. The said mortgage deed, which was duly acknowledged and recorded, gives to the mortgagees a power of sale of the mortgaged property in default of payment of the note at maturity.

The note not having been paid, the mortgagees were proceeding to sell the property, when they were enjoined from so doing by the appellee, who was appointed trustee, under a power in the deed creating the trust estate, to succeed the original trustee, who had resigned the trust.

The appellees, Carlisle & Humphries, in their answer admit the conveyance in trust as set forth in the bill of complaint, but deny that there was any valid consideration therefor, and insist that it was made to hinder, delay and defraud creditors. They admit the execution of the mortgage stated in the bill, and insist that they had a right to sell the mortgaged property to pay the amount due on the debt therein specified. They aver that the amount specified in the said note and mortgage was actually advanced by them to the said W. F. and E. R. Walker for the necessary supplies of the plantation of the said Walker and wife, and that they believe that the said money was used by the said

Walker and wife for the use and benefit of the said E. R. Walker and her children, and that the advances were made solely on the credit of Mrs. E. R. Walker, and not on that of her husband, who was insolvent and unable to obtain credit at the time the advances were made.

The appellees, Carlisle & Humphries, moved the court below to dissolve the injunction on bill, answer, exhibits and proofs. The motion was sustained and the injunction dissolved. And from this decree the cause is brought to this court by appeal on the part of the appellee.'

This record presents three important questions for our consideration:

1. What interest does Mrs. Walker take under the conveyance to a trustee for the use of herself and the heirs of her body forever?

2. Where the wife has joined with her husband in a mortgage of her separate estate to pay the debt of her husband, can the *corpus* of that estate, under the existing laws, be subjected in a court ef equity to the payment of such debt?

3. Is the separate estate of Mrs. Walker liable in equity to the payment of the debt specified in the mortgage or any part thereof?

The first question involves the construction of the limitations in the deed creating the trust estate. It is a common maxim that equity follows the law: *Equitas sequitur legem.* Where a rule of the common or statute law is direct and governs the case with all its circumstances or the particular point, a court of equity is as much bound by it as a court of law, and can as little justify a departure from it. A court of equity cannot disregard the canons of descent. In general, in courts of equity, the same construction and effect are given to perfect trust estates as are given by courts of law to legal estates. The incidents, properties and consequences of the estates are the same. The same restrictions are applied as to creating estates and bounding perpetuities and giving absolute dominion over property. The same modes of construing the language and limitations of the trusts are adopted. 1 Story Eq. (Redf. ed.) 53–55, § 64.

The words "heirs of the body," in the conveyance of a legal estate, are words of limitation of the estate to the donee, and not words of purchase for the heirs of the body. Warren v. Haley,

S. & M. Ch. 647. These words create an estate in fee tail, which, by our statute, is converted into an estate in fee simple. Rev. Code, 307, art. 3. And if it be true that the same modes of construing the language and limitations of trust estates are adopted, as apply to legal estates, we cannot resist the conclusion that Mrs. Walker takes, under the terms of the deed, the entire trust estate absolutely.

With regard to the second question it may be remarked that it is a familiar rule of equity jurisprudence, that general debts or general personal engagements of a married woman, contracted during coverture, are not chargeable upon her separate estate ; and unless a *feme covert* who contracts a debt or enters into an engagement designs that such engagement or debt shall constitute a charge upon her separate estate, a court of equity will not entertain jurisdiction to enforce payment thereof out of such separate estate.

When real property is conveyed absolutely to the separate use of a married woman, she can dispose of the trust estate only in the mode and manner prescribed by the instrument creating the trust estate, and if none be prescribed and limited therein, then in accordance with the provisions of the statute.

Prior to the adoption of our present Code, in 1857, it has been repeatedly decided by this court that the wife may bind the *corpus* of her separate estate, by deed in trust or mortgage, as a security for the debts of her husband. James v. Fisk, 9 S. & M. 144 ; Sessions and wife v. Bacon, 23 Miss. 272 ; Armstrong v. Stovall, 26 Miss. 280 ; Russ v. Wingate, 30 Miss. 445 ; Stone v. Montgomery and wife, 35 Miss. 83–105 ; Prewett v. Land, 36 Miss. 495.

Since the adoption of the Code a married woman has no power to incumber the *corpus* of her separate estate by deed of trust, mortgage or otherwise, for the debt of her husband, but only the income thereof. The statute expressly provides that no conveyance or incumbrance for the separate debts of the husband shall be binding on the wife beyond the amount of her income. Rev. Code, 336, art. 23. This is a wise provision intended to secure to the wife the enjoyment of her separate estate against any possible contingency of loss through the fraud, force or undue influence of her husband.

The solution of the third question depends upon the facts of

Dibrell *v*. Carlisle et al.

the case as they may be developed and established by the evidence. With a view to the more beneficial enjoyment and productiveness of the separate estate of a married woman, the law has provided that all contracts made by the husband and wife, or by either of them, for supplies for the plantation of the wife, or for the employment of an agent to superintend the planting operations, may be enforced, and satisfaction had out of her separate estate. And all contracts made by the wife, or by the husband with her consent, for family supplies or necessaries, wearing apparel of herself and children, or for their education, or for household furniture, or for carriage and horses, or for buildings on her land or premises, and the materials therefor, or for work and labor done for the use, benefit or improvement of her separate estate, shall be binding on her, and satisfaction may be had out of her separate property. Rev, Code, 336, art. 25. And it has been decided that a married woman is liable on a promissory note given by her for a horse purchased by her for the supply and use of her plantation. Robertson v. Ward and wife, 12 S. & M. 490. This adjudication was made under the act of 1846, which made the income only of her separate estate liable to the payment of the debt. And under the act of 1857, this court has decided that the wife is liable out of the *corpus* of her separate estate to the payment of a note given by herself and husband for money advanced for the purpose of purchasing supplies for her plantation, and which was actually applied to that purpose. Bowman and wife v. Thomas E. Helm. These cases are regarded as coming within the equity of the respective statutes under which the debts were contrated.

It results, therefore, from this view of the law, that Mrs. Walker is liable to payment out of her separate estate for the amount of supplies furnished by Carlisle & Humphries for her plantation, and for the amount of the money advanced by them to Walker, or Walker and wife, for the purchase of supplies for her plantation, or the improvement of her separate estate, and which were acually applied to that use and purpose. And for that portion of the debt secured by the mortgage, which was not applied to these purposes, she is liable to payment out of the income only of her separate estate. The record contains no evidence as to what portion of the debt secured by the mortgage was for supplies actually furnished by Carlisle & Humphries for

the plantation of Mrs. Walker, or which was applied to the purchase of such supplies. Nor is there any proof as to what amount of the money advanced by Carlisle & Humphries was applied by Walker to his own use.

The most appropriate remedy of Carlisle & Humphries will be found in a court of equity, in which an account can be taken of what portion of the note secured by the mortgage was for supplies for Mrs. Walker's plantation, and what part of the money was advanced by them for the purchase of such supplies, and which was actually so applied, and what part of the same was used by Walker for his own purposes. When these facts are ascertained, the court will make a decree in accordance with the principles above laid down, subjecting the separate estate of Mrs. Walker to sale to pay for the supplies for her plantation, and decreeing that the trustee of the estate and Mrs. Walker pay to Carlisle & Humphries the amount of the debt, secured by the mortgage, found due them by William F. Walker, out of the income of her separate estate.

It is insisted by some of the counsel of the appellee that the mortgage was void because the trustee did not join in the mortgage deed. This was not necessary. In a case free from fraud or undue influence, a married woman can bind her separate property without the trustees, unless their assent be made necessary by the instrument which gave that property. And in the case at bar the charge made upon the separate estate by the wife is totally unrestrained by the deed creating the trust estate, and is valid and binding, and a court of equity is bound to enforce it, so far as to subject the separate estate to the payment for supplies for carrying on the wife's plantation, and so far as she was surety for her husband, and had mortgaged her property to pay pay his debt, to subject the rents, issues and profits of her separate estate to the payment of that debt.

With respect to the duty of trustees in relation to real property, it is still held, in conformity to the old law of uses, that *pernancy of the profits*, execution of estates and defense of the land are the three great properties of the trust. Therefore, a court of chancery will compel trustees, 1. To permit the *cestui que trust* to receive the rents and profits of the land ; 2. To execute such conveyances as the *cestui que trust* shall direct ;

3. To defend the title of the land in any court of law or equity. Tiff. & Bul. on Trusts and Trustees, 815.

A *cestui que trust* may lawfully dispose of his trust estate, notwithstanding his title is contested by the trustee, for the latter can never disseize the former of the trust estate; but so long as it continues, the possession of the trustee is treated at least in a court of equity as the possession of the *cestui que trust*. Baker v. Whiting, 3 Sumner, 475.

It is insisted that the power of sale contained in a mortgage deprives the mortgagor of his equity of redemption, and therefore cannot rightfully be exercised. The principle seems to be now well established, though after great doubt and discussion, that a clause may legally be inserted in the mortgage deed empowering the mortgagee, upon breach of condition, to make sale of the mortgaged premises, to pay his debt from the proceeds, and account with the mortgagor for the balance. The power of sale is to apply solely to the remedy, and not to impair any right of the mortgagor. The power of sale does not bar the mortgagee's right to foreclose by judicial proceedings. The remedy is cumulative merely, and in no respects affects the jurisdiction or proceedings of a court of chancery. 1 Hill. on Mort. 128, 129. And such sale made after the law day or breach of condition, and in pursuance of the terms of the mortgage, vests in the purchaser all the title conveyed by the mortgage, free from the right of redemption.

There is nothing in the record tending in any way to impeach the validity of the mortgage. There is no evidence of any undue influence or improper conduct or control on the part of the husband to obtain the wife's assent and signature to the mortgage deed. And the debt in question was not incurred for the husband alone, or for unworthy purposes. It was for money advanced and articles supplied, partly for the family, partly for the use of Mrs. Walker, and partly for the benefit of the trust estate. We can, therefore, perceive no good reason why the mortgage should not be enforced against the separate estate or its income, according to the nature, extent and character of the liability when ascertained by proof.

It is objected that the mortgagees had no right to sell the corn advertised, under the power of sale contained in the mortgage deed, for the reason that there was no corn mortgaged. This

objection is well taken; for it is very clear that the mortgagees can sell under the power only the property covered by the mortgage.

For the reasons set forth in this opinion, we think the court below erred in dissolving the injunction.

The decree must therefore be reversed and cause remanded.