### Harriet J. Cary vs. Henry O. Dixon.

1 Married Women: *Separate property. Sale under execution.*
  To authorize a judgment against a married woman, her liability must be shown by an averment, either in the declaration or replication, and established by the evidence. A *feme covert* is incapable of being bound, either by contract or judgment, except in the special cases authorized by law. At common law her contracts were void, and this is the general rule; but modern statutes have made certain exceptions to this, and have given her powers, when she has a separate estate, to contract in certain cases; yet, without more appearing than her mere promise, the contract is *prima facie* void, and it is incumbent on him who asserts that the contract was made about a matter in which the statute authorized her to contract, to show it. A judgment against a *feme covert* is no more binding than her contract, and the records must show affirmative jurisdictional facts.

2. Same: Same: *Judgment; when binding; when a nullity.*
  The judgment of a court of competent jurisdiction has a binding force until it is reversed, and must be so regarded by every other court. But, if the court act without authority, its judgments and orders are regarded

as nullities. If the court awards judgment against a married woman, in a case unauthorized by the law, such judgment will be a nullity, and must be treated as such by other courts.

ERROR to the Circuit Court of *Hinds* County.

Hon. GEORGE F. BROWN, Judge.

The facts in this case are very fully stated in the opinion of the court.

Defendant assigns for error the following:

1. The circuit court erred in overruling the motion for a new trial, and refusing to grant the same; whereas the court should have sustained said motion, and have granted a new trial.

2. Under the law, upon the legal evidence in the case, the finding and judgment should have been for them, and against said Dixon.

3. Whereas, other errors, etc.

*George L. Potter*, for plaintiffs in error:

Mrs. Waller took the land under act of 1846, subject to its provisions. The Code of 1857 declares a different rule. See Code of 1857, p. 337, art. 28. Under the act of 1839, the husband was liable as at common law, for the debts of the wife, contracted *dum sola*. Under act of 1846, he was not liable until her separate estate was exhausted. (H. Code, p. 499, § 8.) Under act of 1857, he was not liable at all if she held separate property under the act. See Code 1857, p. 336, art. 25. These acts established different rules as to property acquired under the different acts. Carter *v.* Carter, 14 S. & M., 59. Mrs. Waller acquired the land under act of 1846. Certain contracts might be enforced against the income. (H. C., p. 498, § 4). The *corpus* could not be sold; the attempt was under act of 1839. Harvey *v.* Edington, 25 Miss., 22; Dunbar *v.* Mayer, 43 id., 685–6; Choppin *v.* Harmon, 46 id., 306; Whitworth *v.* Carter, 43 id., 70, 73; Sanders *v.* Sanders, Opinion Book "C," 545; Bank Louisiana *v.* Williams, 46 Miss., 618, 632; Fox *v.* Davis, Opinion Book "B," 380–2–3; Mays *v.* Davis, id., 505. As to the acknowledgment of the wife, see Russ *v.* Wingate, 30 Miss., 446–7; Morse *v.* Clay-

ton, 13 S. & M., 381; Pickett *v*. Doe, 5 S. & M., 470; Erwin *v*. Hill, 47 Miss., 676–7. Constructions of the words in a deed. 2 Hill. Real Prop., 324, § 7; Potter's Dwarris, 199; Kea *v*. Robeson, 5 Ired. Eq., 378. This case comes under the rule in Silver *v*. Ladd, 7 Wall., 226–8.

*Shelton & Shelton*, for defendants in error.

[The reporters find no brief for the defendants in error in the record.]

TARBELL, J., delivered the opinion of the court.

Dixon brought ejectment against Waller and wife. Mrs. Cary was admitted to appear and defend. There was a joint plea by Waller and wife and Mrs. Cary. A jury was waived, and the cause was tried by the court. Judgment was rendered for the plaintiff. There was a motion for a new trial, "because the said judgment and the decision of the court are contrary to law and the evidence;" which motion was overruled. Thereupon, a bill of exceptions and a writ of error. It was agreed that all the evidence should be received, subject to all legal objections thereto.

1. The first item of evidence was a deed of the premises in question from Tarpley and wife to Mrs. Waller, one of the defendants in the action. This conveyance is dated in November, 1850.

2. The next was a transcript of a part of a record of a judgment against Waller and wife, in favor of Arnold & Co., for $249.37½. Judgment, November 18, 1856.

3. Execution, levy and sale of above lands to Dixon, defendant in error, for $100.

4. Transcript of a part of a record of a judgment against Mr. Waller, the husband, in favor of Robert Doyle, for $121, December 19, 1856.

5. Execution, levy and sale of same lands to Dixon for $100.

6. Sheriff's deed to Dixon of lands sued for.

Dixon was examined as a witness, and testified that Mr. and Mrs. Waller had occupied the lands described since 1851.

Mrs. Cary, one of the defendants, then read in evidence a deed to her from Waller and wife, dated January 18, 1855. This deed will be stated so far as to present the questions raised with reference to it. It is in consideration of $5,500, of which $3,000 were paid at its date, and $2,500 were to be paid January 1, 1856. The deed is absolute, but subject to the condition, that if Waller and wife, on or before January 1, 1859, repay to Mrs. Cary the said $5,500 and interest, then she is to reconvey said premises to them. If they fail so to pay, the deed is to become absolute, and they agree to surrender the possession to Mrs. C. The acknowledgment of this deed is in the words and figures following:

" STATE OF MISSISSIPPI — *Hinds County.*

" Pesonally appeared before me, Wm. B. Mower, an acting jusice of the peace in and for the 'above named county and state aforesaid, Angelina F. Waller, who acknowledges that (she) signed, sealed and delivered the annexed deed on the day of the date above written for the purposes therein specified, of her own free will, separate and apart from her husband, and without fear or threat from her said husband. Also appeared George Waller, who acknowledges that he signed, sealed and delivered the annexed deed, and for the purposes herein contained, on the day and date above written.

" Given under my hand and seal, the above acting justice of the peace in and for Hinds county and state aforesaid.

" Clinton, January 29, 1855.

(Signed) " W. B. MOWER, J. P. [Seal.] "

Errors are assigned as follows: 1. In overruling the motion for a new trial; and, 2. In finding for plaintiff.

Counsel discuss several interesting questions. For the plaintiff in error it is contended that upon the partial transcripts of judgments presented by the plaintiff in the action, the sale of the estate of Mrs. Waller was void. This argument is based upon the ground that the judgment must show the cause of action to be such as to bind the estate of the wife; or, in other words, that

the indebtedness or contract sued on was such as the wife could create or enter into under the statute.

It is also contended that Mrs. Waller is entitled to a homestead exemption in the land sued for, under the act of January 22, 1841. Hutch., 917, art. XVII.

On the other hand, it is urged by counsel for defendant in error that the deed of Waller and wife to Mrs. Cary was inadmissible in evidence, because the certificate of acknowledgment does not conform to the statute, and therefore the contract is void; and because, if properly acknowledged, it is no defense to the action. In support of this last point, it is insisted that the deed is, by its terms, a mortgage, and inoperative because Mrs. Cary never advanced the $2,500 provided for, and the contract fails to make provision for such a failure on her part.

It is also insisted that the contract is not one which Mrs. Waller could enter into under the statute of 1846. Hutch., 498.

Whether for $5,500 or $3,000, it is insisted that the writing is a mortgage, and therefore void. But treating it as valid and binding, it is further insisted that Mrs. C. could not be permitted to defend this action under it.

Counsel also interposes the statute of limitations upon the defense of Mrs. Cary.

Finally, counsel insists that, "under the circumstances of this case, the contract, if it had been a valid legal mortgage, it was no defense to the action, because Waller and wife could not set it up as an outstanding title, and Mrs. Cary could not set it up as a defense to this action."

The counsel for the defendant in error criticises the statute of 1846 with reference to the rights of married women, and contends that, under that act, it was possible for Mrs. Waller to bind herself and her separate estate, so as to subject it to be sold on execution and her title divested. He then urges that, as the court had jurisdiction of the person and of the subject matter, the judgment against her and her husband, upon which the land in controversy was sold, must be presumed to be correct until reversed

on error, and cannot be attacked collaterally. In support of this view, he cites 12 S. & M., 490 ; MSS. Op. J., 526 ; 48 Miss., 706 ; 44 id., 413 ; 43 id., 140 ; 6 S. & M., 179 ; 31 Miss., 29, 119, 578 ; 36 id., 143 ; 33 id., 550 ; 25 id., 559 ; 31 id., 704 ; id., 784 ; 24 id., 517 ; 28 id., 409, wherein it is correctly held that when courts have jurisdiction of the parties and subject matter, their judgments will be sustained until reversed.

It will be perceived that this case gives rise to several interest-esting and important questions. The first in order is as to the binding effect of the judgments against Waller and wife. Only partial transcripts of these were furnished on the trial. From such transcripts the contract or obligation upon which those judgments were rendered cannot be ascertained. It does appear that one of those judgments was against Waller and wife. The other was against Waller alone. The title to the lands involved is in Mrs. Waller. It was objected on the trial, and is urged here, that Dixon obtained nothing by his purchase at execution sale, on those judgements, and, therefore, was not entitled to a recovery in this action. As already stated, it is contended on the other hand that, inasmuch as the court had jurisdiction of the parties and of the subject matter, the judgments must be upheld, whether the action of the court was right or wrong, until reversed on error.

The point presented is believed to have been repeatedly adjudicated in this state, and to be now well established. In Fox v. Davis, MSS. Op. B., 380 ; id., 503, it was very clearly and emphatically adjudged. The court say, that "in order to authorize a judgment against a married woman, her liability must be shown by an averment, either in the declaration or replication, and established by the evidence." And that "Mary G. Fox, at the time of the execution of the instrument sued on and the rendition of the judgment against her, was a *feme covert*, and as such, incapable of being bound, either by contract or judgment, except in the special cases authorized by law." That case was twice before this court. The first judgment against the *feme covert* was on a note made by her jointly with her husband. The second judg-

ment against her was on an injunction bond executed by her and her husband. As to both these judgments, this court declared them to be void as to the married woman. The language of the court is, that "the judgment of the court below is null and void as to the said Mary G. Fox," and that the injunction bond was "given to restrain the collection of a judgment void as to her."

The argument proceeds upon the familiar rule of the common law, that a married woman has no power to contract — her contracts, according to that law being void — and this incapacity still remains, and is the general rule. Modern statutes, however, have made certain exceptions to this, and given her power, when she has a separate estate, to contract in certain cases; yet, without more appearing than her simple promise, the contract is *prima facie* void; and it is incumbent on him who asserts that the contract was made about a matter in which the statute authorized her to contract, to show it. Unlike the status of infants and some other disabled persons, whose acts are voidable only, the acts of *femes covert* are in general absolutely null and void, *ab initio*.

Hence, the rule in Fox *v.* Davis, that a *feme covert*, as such, is "incapable of being bound, either by contract or judgment, except in the special cases authorized by law." She cannot bind herself or her estate, nor can she do any act to charge the latter, or in the disposition of it, save strictly in accordance with the authority conferred by statute. Followed to their logical and inevitable result, these rules establish the doctrine that a judgment against a *feme covert* is no more binding than her contract or other obligation, unless it affirmatively appears in the record to be in the special cases authorized by law, as in Fox *v.* Davis. A contrary conclusion would be inconsistent with the rules of acknowledged force. These can alone give effect and value to the statutes. Otherwise they would be rendered nugatory. The view taken of the question under consideration is believed to be aptly illustrated by the rule with reference to courts of limited jurisdiction, whose records must show affirmatively, jurisdictional facts.

A better illustration, however, is found in the language of this court, in Bank of Louisiana v. Williams, 46 Miss., 632: "We understand the doctrine in this state to be, that a married woman (unless the instrument creating her estate otherwise provides) holds separate property, whether owned at her marriage or acquired since, as if the 23d, 24th, 25th, 26th and 27th articles of the Code, pp. 335, 336, were embodied in an instrument conferring the property upon her; these define the nature and extent of her estate, her ability to sell and dispose of it, and her power to charge or bind it for debts." And, in effect, they must be embodied in the record of a judgment against her, for they define her power to charge her estate as well by judgment as in any other mode.

Another illustration is presented in Elliott v. Piersol, 1 Pet., 328. This may be cited in answer to the argument of counsel, that the judgment against Mrs. Waller is conclusive until reversed. The court say: "Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decisions be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But, if the court act without authority, its judgments and orders are regarded as nullities." The provisions of law referred to are the "authority" by which courts of law pronounce judgments against married women. If they award judgments against them in cases unauthorized by law, such judgments are nullities.

Sir Thomas Plumer, master of the rolls, in Martin v. Mitchell, 2 Jac. & Walk., 424, said, the wife "has no dispensing power;" and this is true, whether the mode of disposition be by deed or judgment.

In Martin v. Dwelly, 6 Wend., 9, with reference to statutes similar to ours, the court say, they "are wise and salutary, and intended for the protection of the wife against the cupidity and improper influence of the husband." If careful restrictions thrown around the execution of a deed by a wife are regarded as "wise and salutary," with what greater reason should she be protected against

judgments rendered against her in unauthorized cases. And, in the same case, it is further remarked, that "he that wishes to divest a married woman of her land, must take care that the statute is complied with before he parts with his money." This advice is sound, whether he undertakes to divest her title by deed or by judgment. Void instruments are incapable of confirmation (Story on Cont., § 47), at least by a judgment on such an instrument against a married woman.

It is considered to be the true doctrine of the cases, and of the reason of the law, as to her, that a judgment against a married woman must show on its face that it was rendered in one of the special cases authorized by statute. A contrary rule would be fatal in its consequences.

The following adjudications of our own courts are understood to indicate, directly or indirectly, the doctrine or rule herein stated, that a judgment against a *feme covert*, upon her contract or obligation, is void, unless the record shows it to be within the special cases authorized by law.   Davis *v.* Foy, 7 S. & M., 64; Frost *v.* Doyle, id., 68; Berry *v.* Bland, id., 77; McKee *v.* Kent, 24 Miss., 131; Stamps *v.* Green, 33 id., 546; Clark *v.* Slaughter, 34 id., 65; Steadman *v.* Holman, 33 id., 550; Hardin *v.* Pelan, 41 id., 112; Robertson *v.* Bruner, 24 id., 242; Whitworth *v.* Carter, 43 id., 61; Dunbar *v.* Meyer, id., 679; Foxworth *v.* Magee, 44 id., 430; Robertson *v.* Ward, 12 S. & M., 490; Selph *v.* Howland, 23 Miss., 264; Dalton *v.* Murphy, 30 id., 59; Harvey *v.* Edington, 25 id., 22; Choppin *v.* Harmon, 46 id., 306; Bank of La. *v.* Williams, id., 618; Fox *v.* Davis, Op. B., 380; id., 503.

But it is expressly declared by statute, Code of 1857, p. 336, art. 26, that "if the suit be against husband and wife, no judgment shall be rendered against her, unless the liability of her separate property be first established."

A few adjudications of the courts of other states are added: Keen *v.* Hartman and wife, 48 Penn. St., 497; Ag. B'k of Miss. *v.* Rice and wife, 4 How. (U. S.), 225; Fowler *v.* Shearer, 7 Mass., 14; 16 Johns., 114; 20 id., 303; 7 id., 81; 8 Cow., 277; 5 Conn., 492;

---

---

etc. It is not deemed necessary to discuss the other questions arising in this case.

Judgment reversed and cause remanded.